150    SUPREME COURT.

Lindsay and Wife vs. Platt.—Statement of Case.

NATHAN LINDSAY AND WIFE, APPELLANTS, VS. JOHN PLATT, ADMINISTRATOR OF JOSHUA PLATT, DECEASED.

1. An advancement to a husband by his father-in-law is an advancement to the wife.

2. An agreement between the father-in-law and the husband that the former would never enforce the payment of a debt due to him from the latter, but that the same should be considered an advancement to the wife; said agreement having been complied with by the father-in-law during his life, makes the amount of said debt an advancement, which ought to be brought into hotch-pot.

This case was decided at Tampa.

Appeal from Hernando Circuit Court.

For a statement of the facts of the case, reference is made to the decision of the Court.

*Gettis & Mitchell* for appellant.

*J. M. Taylor* and *O. B. Hart* for appellee.

WALKER, J., delivered the opinion of the Court.

This suit was brought for an account and distribution of the real and personal estate of Joshua Platt, deceased, who died in 1854, leaving eight children, of whom the *feme* complainant is one.

The only defence set up is that contained in the eighth section of the answer, which reads as follows:

" And this defendant, further answering, says, the complainant, Nathan Lindsay, on the 8th day of January, 1845, then the husband of the said Amy Lindsay, undertook to collect, and for that purpose received from said Platt, deceased, a promissory note in writing, signed by Thomas S. Farr, for five hundred and forty-eight dollars and eighty-one cents; that he, the said Lindsay, about one year thereafter, as the defendant has been informed and believes, and charges to be a fact, did collect the same, with interest, by suit. The said Nathan and Amy, his wife, were then citizens of the State of Georgia; that at the time he so received said note, the said Nathan gave the said Joshua Platt, in his lifetime, his due bill for fifty-two dollars, and the said Lindsay, after he had collected said amount of said note and given his due bill as aforesaid, undertook and agreed, and faithfully promised the said Joshua Platt, in his life-time, to wit, in the year 1846, that if the said Joshua Platt would not sue him and make him pay the said amount of said note so collected as aforesaid and the said due bill, he, the said Nathan Lindsay, would deem the consolidated amounts as an advancement, to be accounted for upon the death of said Joshua Platt, out of the share of his estate that in equity and in law would be coming to Amy Lindsay, his wife, and the legitimate daughter of the said Joshua Platt, deceased; and the said Amy Lindsay was not present when the said Nathan Lindsay made said proposals to her father; but when she did hear of the contract she did not in any man—

152 SUPREME COURT.

Lindsay and Wife vs. Platt.—Opinion of Court.

ner or form express her dissent thereto. Latterly she may have done so, but if so it has not been communicated to this defendant. And the said Joshua Platt agreed to and accepted the proposition of the said Nathan Lindsay, and fulfilled his portion of said contract to the letter; said contract was not reduced to writing; the amount of the note and due bill, when consolidated, with interest thereon, at the date of this agreement, was six hundred and thirty-seven dollars and twenty cents; and this defendant, being administrator on the estate of Joshua Platt, believes and claims and charges it as a fact that said amount ought to be brought into hotchpot for the benefit of the co-heirs of the estate."

To this answer the complainant excepted.

*First.* On the ground that neither said amended eighth section nor any other part of defendant's answer alleges that the said promise or agreement entered into as aforesaid was done and entered into in the presence and hearing of Amy Lindsay, or that she entered with Nathan Lindsay, her husband, into said agreement with the said Joshua, and thereby became one of the contracting parties thereto, or that she at any time after the making of said agreement consented thereto, or that the same was given to her as advancement of her legacy or portion of her father's estate, nor is it alleged that the said Amy had any knowledge that the said Nathan, her husband, and the said Joshua, her father, had ever entered into an agreement such as that alleged by the defendant in the eighth amended section of his answer.

*Second.* The statute of limitation.

*Third.* That said contract not being in writing is void under the statute of frauds.

The following is also a part of the record, viz:

It is hereby confessed by the counsel for the complainants that if it shall be adjudged by the Court that the amount, six hundred and twenty-seven dollars and twenty cents, set forth in the eighth section of defendant's answer, which was

advanced by Joshua Platt to the said Nathan Lindsay, *as in said section alleged*, shall be returned in hotch-pot with the estate of the said Joshua Platt, deceased, for distribution, before the complainants can recover on their bill, then and in that case there would be no amount whatever coming to the complainants.

 (Signed,)   GETTES & MITCHELL,
         Attorneys for Complainants.

Upon this record the parties submitted the cause, after argument, to the Judge of the Southern Judicial Circuit, and the Court being advised of its decree to be rendered therein, "ordered, adjudged and decreed that said bill be dismissed, and that each party pay his costs of suit."

Complainants then appealed to this Court.

The only question presented by the record for our consideration is, whether the defence set up in the 8th section of the answer is a good one, or, in other words, whether the facts set up in that section of the answer amount in law to an advancement.

After an examination of the authorities cited by the able counsel on both sides of this case, and such others as we have been able to find, we have arrived at the conclusion that the question of advancement must depend, generally, if not invariably, on the *intention* of the intestate. The Supreme Court of Kentucky, in the case of Barbour et al. vs. Taylor's heirs, reported in 9th Dana, 86, say: "They (the authorities) virtually recognize as a controlling principle the intestate's intention, and therefore virtually decide that whatever he intended as an advancement, and would have been so treated at his death, should generally, if not invariably, be so considered, without regard to the mode of making or of securing the actual enjoyment of it, concerning all which he should be the sole arbiter; and therefore there could be no doubt that if a father should vest in a

*stranger* the title to property in trust for a daughter, the estate thus intended for her by such provision should generally be deemed an advancement, even though by the malconduct of the trustee she had lost the whole benefit of the provision.

"A gift of money or other personal property to the husband of the donor's daughter would, if not otherwise intended, be an advancement to such daughter, though the husband, by investing or losing it, might prevent his wife from deriving any benefit from it."

There can be no doubt that the intestate intended this as an advancement. He made an express *contract* that it should be so considered. His having made a contract about it seems to have led the learned counsel on both sides into the error of treating the question of advancement as one depending in some degree upon the law of contracts. Such is not the case, and therefore neither the statute of limitations nor the statute of frauds has anything to do with this question. Nor is it material that the daughter did not or might not have known of the arrangement between her husband and father, (it does not appear certainly whether she did or did not know it,) since it certainly appears that her father intended it as an advancement to her, and neither her knowledge or consent was necessary to make it a good advancement. The property in the life-time of her father belonged to him, and it was for him to determine whether he would ever give her anything or not, either by advancement or will. His action in the disposition of his property did not depend in any measure upon her knowledge or assent. Nor does our "married woman's act" of 1845 enter into the consideration of this question further than this, that the husband, the instant his father in-law entered into this arrangement with him, became indebted to his wife in the amount of the sum agreed upon as an advancement. Even if the money had been taken from the pocket of the father and

handed immediately to the daughter, the husband would have been entitled to the immediate possession of it and the wife could not have sued him for even so much as the interest of it. (See Tho. Dig., 221.) It mattered not, therefore, whether the money intended as an advancement was left in the hands of the husband or the wife.

In conclusion, we will cite the case of Bridgers and Wife vs. Hutchins, Administrator, &c., which seems to us directly in point. The report says, (see 11 Iredell, 68,) "The suit is for an account and distribution of the estate of Isaac Hutchins, who died intestate in 1844, leaving four children, of whom the *feme* plaintiff is one."

"Bridges stated before the Master that some years before 1842, but after his marriage, he borrowed from the intestate the sum of $250 and $200, and at the several times of borrowing gave his notes therefor to the intestate, and that in 1842 the intestate gave him up the two notes to be cancelled, saying at the same time that his reason for doing so was that he, the intestate, did not want them to come against the examinant after his, the intestate's, death, and that he was then old and did not expect to live long."

"The plaintiff objected to so much of the report as found those sums of $200 and $250 to be advancements, and upon argument the exception was overruled and the petition dismissed with costs, and the plaintiffs appealed.

RUFFIN, C. J.: "The decree must be affirmed with costs. A gift to the husband during coverture is undoubtedly an advancement to the wife, and it is quite clear that the release or cancelling of the bonds of the child, with the intention thereby to prefer him in life, is as much an advancement as so much cash," citing Gilbert vs. Wetherell, 2 Simons and Stuart, 254.

Let the following order be entered: Ordered, That the decree of the Chancellor rendered in this cause, whereby the bill was ordered to be dismissed, be affirmed with costs.

It is further ordered that a transcript of this judgment be made by the Clerk of this Court, and the same being duly authenticated under his seal of office, be transmitted to the Deputy Clerk of the Supreme Court at Tampa, to be entered upon the minutes of the Court at that place and to stand as a judgment of the regular March Term, 1860, of that Court. *Per curiam.*