JOHN M. TOWLES, ADMINISTRATOR, &c., VS. REBECCA ROUND-TREE ET AL.

1. A father-in-law being compelled to pay a debt as security for his son-in-law, the latter, thereupon, executed and delivered to the former an instrument of writing purporting to be " in full of his proportionable part of his estate." Held : 1st, That this instrument of writing did not operate as a *release,* so as to extinguish the right of the wife to come in as a distributee of her father's estate ; 2d, That it did afford evidence of an *advancement* made to the wife, which must be brought into *hotch-pot.*

2. There is nothing in the Act of 1845, commonly denominated the " Married Woman's Law," to prevent the husband from receiving and receipting for an advancement intended to be made to the wife. And it makes no difference that the wife dies before her father.

3. Grand-children take by *succession,* and whatever affects the interest of the immediate parent will affect their interest.

4. Advancements are not chargeable with interest, when brought into *hotch-pot.*

Appeal from Madison Circuit Court.

This case was decided at Tallahassee.

A full statement of the case is contained in the opinion of the Court.

*D. P. Hogue* for appellants.

*Thos. Baltzell* for appellees.

Francis Roundtree, a citizen of Taylor county, Florida, died in the year 1859, intestate, possessed of a large amount of property, principally personal, leaving a widow, two daughters and four grand-children—the children of a third daughter, deceased, Mrs. Mary Ellen Kemp.

It is admitted that these grand-children have the interest which their mother would have been entitled to if alive, the only subject of contest being as to the effect of an agreement made by their father, Uriah Kemp, in the State of Georgia, where Roundtree and Kemp lived at the time; in these words :

"$3,068 34.—Received, this 1st of March, 1841, of Francis Roundtree, the sum of $3,068 34, in full of all demands against the said Roundtree, against his estate ; and it being my proportionable part of the same, I do hereby relinquish all my right, title, interest and claim to any further demands against said Roundtree, his heirs and assigns, executors and administrators.          [Signed]          URIAH KEMP."

This sale and release of *his* demands and *his* right and interest in the estate of Roundtree, by Kemp, for $3,068, are now set up by the administrator and other heirs as an advancement to Mrs. Kemp, under the statute declaring that " when any of the children of the person dying intestate shall have received from such intestate, in his life-time, any real or personal estate, by way of advancement, and shall choose to come into partition, &c., such advancement shall be brought into *hotch-pot*," &c.—Thompson, 190.

Before considering the subject of advancement, the question arises whether a purchase by a father of the son-in-law's interest in his estate will affect the right and interest of the wife in the estate of her father? "In case the husband survives the wife, he shall have the chattles real, but not the choses in action. A chose in action shall not survive to him, because he never was in possession of it at all

Towles, adm'r, vs. Roundtree et al.—Opinion of Court.

during the coverture."—2 Black.'s Com., 435. Mrs. Kemp died before her husband, and the claim is for chattles personal and not any realty; so that Kemp had no interest, right or title, even under the common law, to Roundtree's estate. His wife's dying before the father, extinguished his interest without any aid from the release.

But the change in our law, by the woman's law of 1845, affected an important alteration in our own and the common law in this respect.

"Married women may become seized and possessed of real and personal property during coverture by bequest, demise, gift, purchase or distribution, subject to these restrictions: When any female, a citizen of the State, shall marry, or a female shall marry a citizen of the State, the female, being seized and possessed of real or personal property, her title to the same shall continue separate, independent and beyond the control of her husband, notwithstanding her coverture, and shall not be taken in execution for his debts," &c. "The husband and *wife* shall join in all sales, transfers and conveyances of the property of the wife," &c.—Thompson, page 221. Now, obviously, if Mr. and Mrs. Kemp had both survived the intestate, no sale or transfer by Kemp of Mrs. Kemp's interest in her father's estate would be of any validity, nor a release nor relinquishment made by him.

How an interest of the true owner (the grand-children) to this property can be legally affected by one who had no right, title, interest or claim to it, who, at the very best, had but a possibility of an interest—if the common law prevailed, this possibility extinguished by the law above cited and the death of his wife—is not easily perceived.

Was this payment an advancement to Mrs. Kemp? The law expressly says, when "a child shall receive any real or personal estate, by way of advancement, such advancement shall be brought into *hotch-pot*." Now, the purchase by

13

302              SUPREME COURT.

Towles, adm'r, vs. Roundtree et al.—Opinion of Court.

Roundtree of Kemp's interest in his estate, through the $3,068, was no advance to the child, Mrs. Kemp; it was personal to the husband, Kemp, entirely, and barred him from a claim—not his wife nor her heirs. This amount was discharged in full by the release of his interest, and Roundtree obtained the full benefit of the bargain, for neither Kemp nor his administrator prefer any claim whatever to it. But how does this affect the grand-children, the true owners, who are strangers to the agreement, and who claim under no right or title derived from the maker of it? They claim not through him, nor any interest that he had, but from their mother. Because he chose, some years since, to bargain and sell his *possibility* of an interest, how can it legally affect their claim?

It is well settled that an advancement must be a pure gift.—4 Wharton, 130; 18 Ala., 176; 31 Penn., 337; 31 Ala., 164; 1 Halstead, 99.

It is said the case of Lindsey and wife vs. Platt has a bearing upon this; yet its application is not perceived. The intestate (Platt) and the son-in-law stipulated that the sum of $637, paid by the father, should be taken and considered as an advancement to his wife—and the wife and husband both survived the father. Not so with Roundtree, who never agreed that his payment of $3,000 should be an advancement, but bargained that it should be a bar to all claims that Kemp, who was a worthless fellow, should have on his estate. The two agreements are as opposite as could be—having distinct purposes and objects, aims and ends.

DuPONT, C. J., delivered the opinion of the Court.

This is a bill in Equity filed by an administrator, and asking for the instruction of the Court to guide him in the administration of the estate. The point upon which the in-

struction is asked, grows out of the following state of facts: Uriah Kemp was the husband of Mary Ellen, a daughter of Francis Roundtree, the intestate. He was engaged in the mercantile business, but, failing therein, his father-in-law was compelled to pay a large sum of money for him, as his surety. Whereupon, he executed and delivered to his said father-in-law the following instrument of writing, to wit:

"$3,068 34.—Received, this first day of March, eighteen hundred and forty-one, of Francis Roundtree, the sum of three thousand and sixty-eight dollars and thirty-four cents, as being in full of all demands against the said Roundtree, against his estate, and it being my proportionable part of the same. I do hereby relinquish all my right, title, interest and claim to any further demands against the aforesaid Francis Roundtree, his heirs and assigns, executors and administrators. In witness whereof, I have hereunto set my hand on the day and year above written."

This transaction took place in the State of Georgia, and a year or two after, to wit: in the year 1844, all of the parties removed to this State and became citizens thereof. Mary Ellen, the wife of Uriah Kemp, died, leaving three children of this marriage, and her father, Francis Roundtree, surviving her. Francis Roundtree afterwards, to wit: in the year 1859, also died, intestate—leaving, surviving him, two children of his own, and three grand-children, being the offspring of his deceased daughter, Mary Ellen Kemp. The contest in this suit is between the children and the grand-children, as the representatives of their deceased mother, in the distribution of the estate.

Upon this state of facts, it is insisted, on behalf of the children, that the paper recited in the foregoing statement operates as a total extinguishment of the right of the grand-children to come into the distribution, as the representatives of their mother. That the paper, before referred to, was an

absolute release of her expectancy from her father's estate; and having been executed by her husband for a good and valuable consideration, it operated to extinguish any right which she could ever have as a distributee of her father's estate, and consequently presented an absolute bar to any claim of the children, as her representatives. That if the Court should be of opinion that this paper was not a release, that then it must be taken as good evidence of an advancement *pro tanto*, which must be brought into *hotch-pot*, with interest accruing thereon from the date thereof.

No authority was cited to establish this paper as a release, and we are very confident that the position assumed is as unsustained by precedent as by any sound logical deduction. To establish this paper as a release, and to give it the operation contended for, would present an anomaly in legal instruments. To presume that a man would consent to pay to another a valuable consideration for the release of a right wholly dependent upon his simple volition, and that, too, only to an expectancy, is not only contrary to sound reason, but is opposed to any of the motives which are found to govern and control human action. Such, then, cannot be the operative effect of this instrument. Whether it shall be taken as a matter of evidence, going to establish an advancement made by the grand-father to the mother of the grand-children, is a question of a different character, the solution of which may be tested by sound reason and controlling authority.

To negative the idea of advancement, it was assumed on behalf of the grand-children, in the first place, that the benefit accruing from the transaction having been personal to the husband, did not affect the interest of the wife. That, to constitute a good advancement to the wife, the money must be paid into her own hands, and that the husband had no right to receipt for it. That even admitting the right of

the husband under the principles of the common law, yet inasmuch as all the parties were citizens of this State, where the statute secures to the wife the title to her own property, that right would not here exist.  Both of these points came under discussion before this Court, in the case of Linsay and wife vs. Platt, 9 Fla. R., 150, and were ably and elaborately argued by the counsel on both sides.  The Court, after very patient investigation and mature deliberation, adjudicated the points ; and the decision, in that case, is now to be taken as the settled law in this State.  The Court there determined that: "1. An advancement to a husband, by his father-in-law, is an advancement to the wife." "2. An agreement between the father-in-law and the husband, that the former would never enforce the payment of a debt due to him from the latter, but that the same should be considered an advancement to the wife, said agreement having been complied with by the father-in-law during his life, makes the amount of said debt an advancement, which ought to be brought into *hotch-pot*."

Though it does not appear in the head-notes, yet it will be found by reference to the opinion, that the point made in this case with reference to the operative effect of the *statute*, came up for consideration in that case and was expressly adjudicated by the Court.  The Judge, in the opinion delivered in that case, remarks : "Nor does our 'married woman's act,' of 1845, enter into the consideration of this question further than this—that the husband, the instant his father-in-law entered into this arrangement with him, became indebted to his wife in the amount of the sum agreed upon as an advancement.  Even if the money had been taken from the pocket of the father and handed immediately to the daughter, the husband would have been entitled to the immediate possession of it, and the wife could not have sued him for even so much as the interest of it.  It mattered

not, therefore, whether the money intended as an advancement was left in the hands of the husband or the wife."

But it is further insisted that the case under consideration is distinguishable from the case of Linsay and wife vs. Platt, in this particular, to wit: that in that case the wife survived the father, while, in this, her death occurred some years anterior to his. It seems to be assumed by one of the counsel, who represents the claim of the grand-children, and whose written argument is now before us, that the heritable capacity of the grand-children and their right to come in as distributees of their grand-father's estate, was totally independent of their mother, and that no act of hers, or affecting her interest in the estate, can operate to affect their interest. This position is not in accord with, or supported by any canon of the common law on the subject of inheritance. But for the right of the mother, they would be as much strangers, with respect to the estate of the grand-father, as though they were not of his blood. The grand-children take by *succession*, and in their representative capacity, and have no original or inherent heritable capacity.

The conclusion to be deduced from these views is, 1st, that the paper signed by Uriah Kemp and filed as an exhibit in the cause, did not operate as a release, to extinguish his wife's right to become a distributee of her father's estate after his death; 2d, that it does furnish evidence of an advancement made to the wife, and so far did affect the value of her interest as a distributee, and, through her, the interest of her children; 3d, that the statute of this State, which secures to the wife a separate interest in her own property, does not affect the interest involved in this suit.

But one other question remains to be disposed of, and that is as to the right to have the amount of the advancement charged with interest. The counsel, in asserting this claim to interest, furnished the Court with no authority to

Towles, adm'r, vs. Roundtree et al.—Opinion of Court.

the point, and we are rather of opinion that the whole current of authority will be found to be the other way. We doubt not that the text-books furnish ample light on this point, but they have not been furnished to the Court, and are not now accessable to us. In the case of " Miller's Appeal," 31 Penn. State Rep., 337, the Court refused the claim for interest, holding an advancement to be a *pure gift*, and not chargeable with interest. If the law were as is contended for by the counsel for the appellant, an advancement to a child would cease to be a benefit, and, in the majority of cases, would prove only a grievous burden. It would be the conversion of a *gift*, which the term itself implies, into a simple *loan*, purchased for a valuable consideration—the payment of interest. The purpose of an advancement is to furnish the children, as they may become of age, with a capital with which to commence business when they leave the paternal roof and set up for themselves. To burden it with the payment of interest would leave the child under no special obligation to the parent, since he might readily obtain the same accommodation from a mere stranger.

We have deemed it unnecessary to comment upon the cases cited at the hearing, for the reason that all the points legitimately arising in the case had already received the solemn adjudication of this Court, in the consideration of the case of Linsay and wife vs. Platt, before referred to.

Having maturely considered all the points presented by the record, it is ordered, adjudged and decreed that the final decree heretofore pronounced by the Chancellor in this cause be *reversed* and set aside, and that the cause be remanded to the Court below, with directions to take such other and further proceedings therein as may be conformable to this opinion.