# ESTATE OF E. L. BUCKNOR, DECEASED.

APPEAL BY A. E. STARR FROM THE ORPHANS' COURT OF
PHILADELPHIA COUNTY.

Argued January 28, 1890—Decided June 4, 1890.
[To be reported.]

1. The Orphans' Court, in distributing the estate of an intestate, may
   charge against the share of a married daughter the principal of a note
   given by her to the decedent for borrowed money, notwithstanding that
   the daughter was at its date legally incapacitated by her coverture from
   contracting a loan.
2. The daughter, while not technically a bailee of the money for the estate,
   was bound in equity and good conscience to return it upon repudiating
   the note, and hence the Orphans' Court, as a court of equity, may treat
   it as virtually money of the estate in her possession, and make the dis-
   tribution upon that basis.

Adjudication.

3. A married woman, in her dealings with the world, should be held to the observance of the same good faith to which others are bound; the protection against liability upon contracts which her coverture affords, is for the prevention of fraud, and she should not thereby be enabled, with impunity, to defraud others: Grim's App., 105 Pa. 382.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 166 July Term 1889, Sup. Ct.; court below, No. 414 January Term 1889, O. C.

On April 2, 1889, the account of the Fidelity etc. Company, administrator of the estate of Emeline L. Bucknor, deceased, exhibiting a balance for distribution, was called for audit before PENROSE, J., who on April 18, 1889, filed an adjudication in part as follows:

The decedent died, as represented to the court, January 30, 1887, intestate, a widow leaving five children: Marion B. James, Virginia B. Wormley, William H. Bucknor, Charles Bucknor, and Mrs. Annie E. Starr; and grandchildren and great grandchildren: . . . . .

In January, 1886, Mrs. Annie E. Starr received from the decedent $1,000, and gave to her the following paper:

"1886.

"Received of Mrs. E. L. Bucknor one thousand dollars $1,000 January Thursday 14th will pay $50 dollars a month—also six per cent interest.          (Signed)  Annie E. Starr."

At the foot of this paper is written in lead pencil: "Rec. from Mrs. Starr $30 interest on Thursday 10th.   E. L. BUCKNOR."

There is no allegation that the money so received was ever returned by Mrs. Starr; but she was at the time and still is the wife of Henry C. Starr, and now sets up her coverture as a reason for not charging her in distribution with the amount.

It is said on her behalf, first, that the doctrine of advancement does not apply to the distribution of the estate of a mother; and second, that a debt cannot be changed, in cases of intestacy, into an advancement.

1. Under the English statute, grounded on the Custom of London, which never, it is said, affected a widow's personal es-

### Adjudication.

tate, it was decided by Lord KING, in Holt v. Frederick, 2 P. Wms. 357, though as the reporter says "without much debate," that if a mother, being a widow, advances a child, and dies intestate, leaving many children, the child advanced shall not bring what he has received from his mother into hotchpot; and on the strength of this case, the law is so stated in Williams on Executors, 1607. This, however, does not seem to have been the understanding in Pennsylvania: See Murphy v. Nathans, 46 Pa. 508, though the auditing judge is nót aware of any case in the state where the question has been directly raised. Our statute [act of April 8, 1833, P. L. 315], unlike the Custom of London referred to by Lord KING, is general, and provides for the division and enjoyment of the "real and personal estate of a decedent, whether male or female;" and, though the sixteenth section relating to advancements uses the masculine pronoun, this is evidently in a generic sense; just as in the thirteenth section, which provides that "descendants and relatives of an intestate begotten before *his* death and born thereafter shall in all cases inherit and take in like manner as if they had been born in the lifetime of such intestate;" and § 2, clause III., where it is declared that "if such intestate shall leave descendants in any other degree of consanguinity, however remote from *him* and all in the same degree of consanguinity to *him*, the estate shall descend to and be distributed among such descendants;" and clause IV.: "If such intestate shall leave descendants in different degrees of consanguinity to *him*, the more remote of them being the issue of a deceased child, grandchild, or other descendant, the estate shall descend to and be distributed among them as follows," etc. No one will contend that these sections do not relate to the descent of the estates of females as well as of males.

The precise point has been decided under the New York statute, which differs in no essential respect from ours, in Kurtz v. Friday, 4 Dem. R., where the doctrine of Holt v. Frederick is rejected, in an elaborate and well considered opinion by the surrogate, Judge Adlington.

2. The cases in which it is said that a debt cannot be changed into an advancement are cases where the liability of the child, as debtor, has been suffered by the parent to become barred by the statute of limitations. In such cases, it is manifest that the

parent did not intend at the outset to deal with the child in any other relation than that of debtor and creditor; and the relation thus established cannot subsequently be changed without the consent of both parties to the contract. But here, one of the parties being incapable of entering into a contract and now setting up that incapacity, there never was any contract at all.

It is clear that the decedent did not intend that her daughter should keep the amount received by her as a gift; [and the daughter repudiates the idea that it was received by way of loan.] [4] The result was that the property remained in the mother and continued hers, though in the hands of the daughter. The contract having been void ab initio, there never was a debt at all, and the principle that what was once a debt cannot be treated as an advancement, has no application. It is a familiar doctrine that one who avoids a contract by setting up his or her inability to enter into it, must return the consideration: Badger v. Phinney, 15 Mass. 359; 2 Kent Com., 240. This, as was said in Fulton v. Moore, 25 Pa. 478, applies to the contracts of married women no less than those of infants: " Whether the contract be void or voidable, or whether it be made by an infant or feme covert, is immaterial, because its validity depends not so much upon ratification as upon honesty and conscience, which will not permit any one to unjustly enjoy both the thing itself and its value." The principle was applied to its fullest extent in the recent cases of Fryer v. Rishell, 84 Pa. 521, and Grim's App., 105 Pa. 376.

Having got $1,000 of her mother's property by her contract to return it, and the contract, as she now asserts, being one which she had not the right to make, Mrs. Starr's position is simply that of a person holding the custody of that to which she has no title; and, while at law there would, perhaps, be difficulty in enforcing the return to the estate, the property being money which cannot be followed (it would be otherwise if she had purchased an article for which replevin could be brought), a very different condition of affairs is presented when she comes into a court of equity asking for her share of an estate of which she thus already holds a part. Certainly every principle of morality is against the attempt on the part of the daughter to secure to herself, through the fiction of her want of capacity, a larger share of her mother's estate than can be had

Opinion of Court below.

by her brother and sisters. In this view of the case, the question whether the doctrine of advancements applies to a mother's estate becomes immaterial: the money was not given, and [there was no contract of loan; the daughter, therefore, held merely as custodian or bailee, and will retain what she so holds as part of her share of the entire estate.] [3]

The $1,000 in the hands of Mrs. Starr, will, for the purpose of distribution, be added to the balance and charged against her distributive share.

—Thereupon the auditing judge made a distribution of the fund in the accountant's hands, in accordance with the foregoing conclusions.

To this adjudication, Annie E. Starr filed exceptions, alleging that the auditing judge erred in finding that the due-bill for $1,000 was an advancement and not a debt; [1] in deducting the amount of it from the distributive share of the exceptant, [2] and in reporting the findings embraced in [ ] [3] [4]


After argument of the exceptions before the court in banc, the following opinion was filed, FERGUSON, J.

The decision of the auditing judge, in this case, was so manifestly equitable and just that, if it were necessary, we would, perhaps, be justified in straining a point to sustain him in the conclusion which he has reached; but there is no necessity to do this, as we think he is sustained by abundant authorities.

A daughter of the decedent had received from her the sum of $1,000, for which she gave an acknowledgment in writing, and during her lifetime made at least one payment of interest on the same. In the distribution of the decedent's estate it was sought to charge this sum against her distributive share. This was resisted, upon the ground that it was not an advancement, because a mother cannot make an advancement, and, also, because it was a debt; and it was not a debt, because the daughter was at the time a married woman, and, therefore, incapable of contracting any debt. It was not alleged that it was a gift, and if it was, the paper signed at the time, and the payment of interest, negative any claim of this kind. In a word, this daughter holds $1,000 belonging to the estate of her mother, without any consideration. This she claims to keep, so that, in the distribution of this small estate, she receives $1,000 more than each of the other five children.

Opinion of Court below.

It is needless to discuss the question whether this money is to be considered as an advancement or a loan, because the daughter repudiates both of these positions, for the reason that to admit either leaves no room to escape from her share being charged with it. The honest and proper thing to do is what she desires to avoid doing; and, to accomplish this desire, she invokes all the technicalities which her coverture throws around her.

Does her coverture permit her to be dishonest? This is the question which this case presents for our consideration.

There is no doubt but that when this money was given to the daughter, it was intended by both parties to the transaction as a loan. The daughter received the money with that understanding. She now says, "I was a married woman and incapable of making a contract, and it is therefore void." She repudiates the contract, but keeps the money which was the fruit of it. This position is so unconscionable that no court of equity would sustain it for a moment.

It is well settled that one who avoids a contract by setting up his or her inability to enter into it, must return the consideration. This was held in Fulton v. Moore, 25 Pa. 468, to apply to the contracts of married women as well as those of infants. In the very recent case of Bigham's App., 123 Pa. 262, the Supreme Court say: "Married women have no license to do such unconscionable and unreasonable things as this, especially when they have enjoyed the fruits of the judicial action, which they solicited and procured, for nearly half of a century. Courts of justice are not convenient playthings to be used by designing persons for their private purposes, even though they be married women. Such tribunals cannot be expected to stultify themselves in order to gratify the wrongful or dishonest purpose of a litigant, because she has a husband." In Grim's App., 105 Pa. 382, the court say that "A married woman should be held to the observance of that good faith in her dealings with the world to which others are bound. Her protection is for the prevention of fraud. She should not thereby be enabled with impunity to defraud others." To the same effect, see also Couch v. Sutton, 1 Gr. 114; McCullough v. Wilson, 21 Pa. 436; Fryer v. Rishell, 84 Pa. 521; Brown's App., 94 Pa. 362; Powell's App., 98 Pa. 403.

In this case, the contract of loan having been repudiated by

Arguments.

the exceptant on account of her coverture, it is at an end, and the money should have been returned. As this has not been done, and the money still remains in her possession, we agree with the auditing judge that in order to accomplish justice [she must be considered as holding it as custodian or bailee for the estate, and in the distribution it should be deducted from her share thereof.] 5

The exceptions are dismissed and the adjudication confirmed.

—The exceptant then took this appeal, assigning for error:

1–4. The dismissal of the exceptions to the adjudication.¹ to 4

5. The conclusion of law set forth in [ ] 5

*Mr. F. Carroll Brewster*, for the appellant:

1. Although the court below has decided that the due-bill represented neither a gift, a loan, nor an advancement, and that the exceptant is merely a custodian or bailee of the money named in it, the full force and effect to which it would be entitled, as an advancement, has been given to it. The money must have been intended either as a gift, as a loan, or as an advancement. That it can in no manner be considered as an advancement, is settled beyond question by the following cases: High's App., 21 Pa. 283; Harris' App., 2 Gr. 304; Miller's App., 40 Pa. 57; Craig v. Moorhead, 44 Pa. 97.

2. If the intention of the parent was that it should be repaid, it became a loan. The charge of interest is conclusive that this was a loan; and, if it was, it can never be treated as a bailment, else every borrower could be arrested as a bailee, under the criminal code. The court has practically decided that coverture was no defence to an obligation, before the act of June 3, 1887, P. L. 332. The appellant, moreover, does not repudiate the idea of a loan, but contends that the note is in the same position as if barred by the statute of limitations, and she interposes a defence of which the court had no right to deprive her: Shaw v. Boyd, 5 S. & R. 309; Ruchizky v. De Haven, 97 Pa. 202.

*Mr. Richard C. Dale* and *Mr. Henry C. Terry* (with them *Mr. James F. Bullitt*), for the appellees:

1. The receipt given by Mrs. Starr to her mother shows that the $1,000 received was not intended as a gift. It must there-

fore be classed either as a loan, as an advancement, or as a bailment. In view of all the circumstances it may be treated as an advancement: Weaver's App., 63 Pa. 311; King's Est., 6 Wh. 370. The fact that it amounts to nearly one half of Mrs. Starr's distributive share, raises a presumption to that effect. The fact that interest was to be paid does not necessarily show that it was intended as a loan : Wright's App., 89 Pa. 67. The coverture of Mrs. Starr, and the form of the receipt, lead to the conclusion that a loan, which could not be enforced, was not intended.

2. The readiness of the courts to presume an intention to make an advancement, in order to do equity, is shown by Dutch's App., 57 Pa. 461; Storey's App., 83 Pa. 89; Kirby's App., 109 Pa. 41. See also Holliday v. Wingfield, 59 Ga. 206. Moreover, the plea of coverture is a practical disaffirmance of the transaction as a loan. There being no assertion that it was a gift, the court took the only other alternative; namely, to treat it as a bailment. But even if the transaction was originally a loan, Mrs. Starr cannot now disaffirm it and yet keep the money: Fulton v. Moore, 25 Pa. 478 ; Fryer v Rishell, 84·Pa. 521; Heacock v. Fly, 14 Pa. 540 ; Roof v. Stafford, 7 Cow. 179; Badger v. Phinney, 15 Mass. 359; Roberts v. Wiggin, 1 N. H. 73 (8 Am. Dec. 38); Hamblett v. Hamblett, 6 N. H. 339; Boyden v. Boyden, 9 Metc. 519; Foxworth v. Bullock, 44 Miss. 457 ; Carpenter v. Mitchell, 50 Ill. 471; Wilson v. Lawrence, 8 Hun 593; Weed v. Beebe, 21 Vt. 495 ; Smith v. Evans, 5 Humph. 70.

OPINION, MR. JUSTICE STERRETT:

While it is not technically accurate to say that appellant is a bailee for the estate of the money she received from her mother, since deceased, we agree that, having repudiated the note in which she promised to repay it, she was bound, in equity and good conscience, to return it to her mother, or to her personal representative after her decease, and that it may therefore be regarded in equity as money of the estate in her possession. The ' Orphans' Court is practically a court of equity; and, when it appeared that appellant, who was there claiming a full distributive share of her mother's estate, had virtually in her possession money which should have formed a

part of the fund for distribution, the court might well act on the maxim of equity that what ought to have been done has been done, and proceed to distribute the fund accordingly. As was well said in Grim's App., 105 Pa. 382, " a married woman should be held to the observance of that good faith in her dealings with the world to which others are bound. Her protection is for the prevention of fraud. She should not thereby be enabled, with impunity, to defraud others." The course of procedure adopted by the court below was well calculated to prevent any such result in this case, and we think it is sustainable on reason as well as authority.

It is unnecessary for us to further consider the subject. It has been so fully and ably discussed by the learned judge of the Orphans' Court that, for reasons given in his opinion and the authorities cited in support of them, we are satisfied there is no error in the decree, or in the proceedings leading thereto.

Decree affirmed, and appeal dismissed, at the costs of appellant.