LILLIAN B. CORLETT v. RUBY B. MAY, MILDRED BACHMAN HODSDON, WALTER H. BACHMAN and HARRISON BACHMAN.

171 So. 517.

Division B.

Opinion Filed December 11, 1936.

Rehearing Denied January 8, 1937.

*Miles Ventress,* for Appellant;

*Nicholas Hodsdon* and *Morton B. Adams,* for Appellees.

BUFORD, J.—This case is before us on appeal from judgment of the Circuit Court affirming the order of the County Judge acting as Judge of the Probate Court, as follows, to-wit:

"IT IS ORDERED AND ADJUDGED that Ruby B. May, the Administratrix of said Estate, be and she is hereby authorized and directed to charge against the distributive share of Lillian B. Corlett the sum of $800.00, that being the principal amount, without interest due and unpaid on said promissory notes executed by Lillian B. Corlett to Stella Williams, copies of which are attached to the answer of said Lillian B. Corlett and the execution of which are ad-

mitted by her in said answer, and said administratrix is further authorized and directed to mark said promissory notes 'cancelled' and to return said notes to Lillian B. Corlett.

"IT IS FURTHER ORDERED AND ADJUDGED that the sum of $709.30, which this Court heretofore ordered the administratrix to hold intact pending said rehearing, shall be distributed forthwith by the administratrix, to the following heirs, or to their attorneys, as follows:

> To Mildred Bachman Hodsdon the sum of $160.00
> To Walter H. Bachman the sum of _____ 160.00
> To Harrison Bachman the sum of _____ 160.00
> To Ruby B. May the sum of _____ 160.00
> To Lillian B. Corlett the sum of _____ 69.30"

From the pleadings and from the briefs, we gather that the facts upon which judgment is to be rendered are as follows: Stella Williams died intestate, unmarried and without issue in December, 1933. Her father and mother predeceased her. She left as her sole heir three sisters, to-wit: Lillian B. Corlett, Ruby B. May and Mildred Bachman, now Mildred Bachman Hodsdon, and two brothers to-wit: Harrison Bachman and Walter H. Bachman. Ruby B. May was appointed administratrix. Stella Williams left an estate in Florida. On September 15, 1931, Ross Corlett borrowed $800.00 from Stella Williams and gave her five (5) promissory notes, two of which were for $100.00 each, one due one year after date and one due eighteen months after date, and three (3) notes for $200.00 each, one due two years after date, one due thirty months after date and the other due three years after date. The notes each recite that they are secured by a trust deed embracing that certain parcel or lot of land described as follows, to-wit:

"Being lots No. 23 and No. 24 Block No. 10 of the Scotland addition to the City of Wichita Falls, Texas."

The trust deed is not in the record. The notes were dated at Wichita Falls, Texas, and the record shows were made and executed there, being signed by Ross Corlett and Lillian B. Corlett; that the money was not loaned for the benefit of the separate estate of Lillian B. Corlett; that the notes were not given in consideration for necessities and that she, Lillian B. Corlett, did not receive any of the money proceeds of the notes.

The question is, "Did the loan of $800.00 from the sister of Lillian B. Corlett to Ross Corlett, although the notes evidencing the indebtedness were signed by Ross Corlett and Lillian B. Corlett, constitute an advancement as contemplated by Sec. 164 of the Florida Probate Act of 1933?" That section of the Act is as follows:

"ADVANCEMENTS.—When any person shall have received any advancement from an intestate, in his lifetime, and any of the next of kin shall, by petition, allege such advancement had been made, the same shall be determined by the County Judge upon hearing after citation or notice to the personal representative and other persons interested and, unless the person to whom such advancement was made, or those claiming through him shall renounce his or their interest in the estate, such advancement as of the value at the time made, without interest, shall be taken into account in determining the distribution of the estate and charged against the person to whom such advancement was made or those claiming through him. No personal representative shall be held responsible for having made distribution before such a petition has been filed and citation served upon or notice given to him. The statute of limitations shall not apply to advancements."

The language of the Probate Act is broad enough to make the law of advancement applicable to any heir interested in the estate and, therefore, it applies to and affects the interest of grandchildren or other heirs, either lineal or collateral. See 18 C. J. 914. It must necessarily follow, however, that before a transaction may be held to constitute an advancement it must be shown that at the time of the transaction the existing conditions were such that if continued until the death of the donor the donee would be entitled to participate in the inheritance of the estate of the donor. Such condition is not disclosed by this record. *Non constat* the alleged donor may have had living at the time of the transaction a husband or a child or a father or a mother and, if she had either, the sister could not have received an advancement from the donor's estate because if that condition had continued the sister would have had no distributive share in the estate. The burden of showing the transaction to have constituted an advancement was on the petitioners. They have not met the burden.

We have found no better definition of the term advancement than is given by Mr. Redfearn in his excellent work on Wills and Administration of Estates in Florida, page 504, as follows:

"An advancement is any provision made by the intestate for any person interested in the estate as an heir, either in money or in other property, real or personal. The parental obligations of maintenance and education and donations from affection made to a child, unless made with the intention that they should be considered as advancements, are generally not regarded as such. The support of a child under the parental roof, although past majority is usually not regarded as an advancement unless charged as such by the parent. Whether or not any gift is to be considered as

an advancement depends upon the intention of the donor. The declarations of the donor are admissible to prove such intention. The general rule is that courts are very liberal in admitting evidence of any facts and circumstances tending to show the intention of the intestate in regard to alleged advancements."

It appears that there has been no testimony taken and no effort to prove the intention of the alleged donor and, therefore, all other questions aside, unless there had been a stipulation of facts agreed to to take the place of testimony, the County Judge as a Judge of Probate was not authorized to hold that the $800.00 involved constituted an advancement. So far as the record shows, that $800.00 was a loan secured by a trust deed on real estate and there is nothing to show that it was ever intended by the donor to be an advancement to her sister.

In the case of Taylor, *et al.*, v. Everett, *et al.*, 60 Fla. 362, 52 Sou. 980, Mr. Justice WHITFIELD, speaking for the Court, indicated that an advancement necessarily had its origin as a gift and not a debt. In that opinion it was said:

"An advancement being a gift and not a debt, interest is not charged on the value of the advancement at least until after the advancement is required to be brought into hotch-pot, unless a contrary intent of the intestate appears, since the intestate and the law intend the benefits to accrue from the advancement, and the person receiving the advancement may elect to keep the advancement and thereby relinquish a right to participate in the distribution of the intestate's estate. See Towles v. Rountree, 10 Fla. 299; Davis v. Hughes, 86 Va. 909, 11 S. E. Rep. 488; Harris v. Allen, 18 Ga. 177; Hannah v. Winburn, 7 In. Ep. (N. C.) 142."

In Dent v. Foy, 210 Ala. 475, 98 Sou. 390, the Supreme Court of Alabama held:

"In determining whether transactions between the decedent and the distributees were intended as gifts or advancements, the intent of the decedent is controlling and to show that they are advancements, there must be shown that they intended it to be charged against the respective shares in the estate."

The case of Lindsay, et ux., v. Platt, Administrator, 9 Fla. 150, is to be differentiated from the case at bar because there it was shown that it was the purpose of the intestate to forgive the debt due to him by the husband of his daughter upon consideration that the amount of the indebtedness should constitute an advancement to the daughter. The contract referred to in the Lindsay case was not binding upon the daughter as a contract. That contract had evidentiary value only to show that it was the intent of the father that the amount of money owed to him by the son-in-law should be charged as an advancement to the daughter.

The case of Towles v. Roundtree, 10 Fla. 299, is likewise distinguished from the case at bar. In that case Francis Roundtree became surety for his son-in-law, Uriah Kemp, and was compelled to pay a large sum of money as such surety. Thereupon Uriah Kemp executed a writing, as follows:

"3,068.34—Received this first day of March, eighteen hundred and forty-one, of Francis Roundtree the sum of three thousand and sixty-eight dollars and thirty-four cents, as being in full of all demands against the said Roundtree, against his estate, and it being my proportionable part of the same, I do hereby relinquish all my right, title, interest and claim to any further demands against the aforesaid Francis Roundtree, his heirs and assigns, executors and ad-

ministrators. In Witness, whereof, I have hereunto set my hand on the day and year above written."

The case was decided on authority of the Lindsay case and, after stating the pertinent facts and suggesting the analogy to the Lindsay case, the Court said:

"The conclusion to be deduced from these views is, 1st, that the paper signed by Uriah Kemp and filed as an exhibit in the cause, did not operate as a release, to extinguish his wife's right to become a distributee of her father's estate after his death; 2d, that it does furnish evidence of an advancement made to the wife, and so far did affect the value of her interest as a distributee and, through her, the interest of her children; 3rd, that the statute of this State, which secures to the wife a separate interest in her own property, does not affect the interest involved in this suit."

The case of Merritt v. Jenkins, 17 Fla. 593, is distinguishable from the instant case because in the Merritt case the joint note of the husband and wife was given to the executor and trustee when the wife signing the note with the husband was then a legatee and *cestui que* trust and she became a debtor to the trust estate.

In Willock's Estate, Forsythe's Appeal, 165 Pa. St. 522, 30 Atl. 1043, a married woman borrowed money from her father and used it in buying a farm, securing its payment by her separate bond and mortgage of herself and husband on the farm. Here the married woman's separate estate benefited by the money advanced by the father. She attempted to disaffirm the contract to repay the money but offered to deed the farm in lieu of the payment of money. It was in that case held that her bond was a part of the father's estate and that as it represented money which she had received and promised to repay should be considered

for the purpose of distribution a part of the estate in her possession.

In the case of Walker v. Brooks, 99 N. C. 207, 6 S. E. 63, a father gave his married daughter a railroad bond in the sum of $1070.00, received in return her personal bond for $670.00, intending to give her $400.00. It was held that in the settlement of the estate she is chargeable with the amount of her bond, although it was not binding upon her as a legal contract because of coverture. It will be seen that in this case the daughter received a substantial benefit for which she agreed to pay in part and receive the balance as a gift. While she held the railroad bond it was at least a part of the estate in her possession and, therefore, she was properly required to account for it.

In the case of Appeal of Starr, 19 Atl. 1069, decided by the Supreme Court of Pennsylvania, a married woman borrowed $1,000 from her mother. The court held:

"A married woman who had borrowed money from her mother and given a written acknowlédgment therefor, repudiated the obligation after the mother's death on the ground that being a married woman she was incapable of contracting a debt. *Held,* that she should have returned the money and that, therefore, the orhpans court in distributing the mother's estate would deduct this money from her share."

So far as the record in *this* case shows, the five notes of Ross Corlett and Lillian B. Corlett, together with the trust deed securing the same, if such a trust deed exists, should be held to be assets in the hands of the Administratrix of the estate.

The record does not disclose that the money borrowed on those notes was an advancement by the intestate to her sister, Lillian B. Corlett.

So the order appealed from should be and the same is reversed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, and DAVIS, J. J., concur in the opinion and judgment.