SMITH ET AL. v. STEPHENSON ET AL.

1. **Principal and Agent:** AUTHORITY OF AGENT. Authority given by a principal to an agent to invest his money, and look after his business generally, will not enable the agent to sell his principal's property, even such as may be acquired as the result of the investment.

2. ————: TAX PURCHASE. Where one is buying at a tax sale for himself, and is also. acting in some purchases as the agent of another, it will be presumed that the purchases made in his own name, and upon which he takes the certificates, are not made for his principal but for himself.

3. **Tax Sale:** ASSIGNMENT. Where a tax purchaser assigned his certificate to another, the assignment not being recorded, and after the expiration of three years from the time of sale, but before the execution of the deed, executed a quit claim deed to the owner of the property, *held* that the quit claim deed conveyed no title, and that the assignment of the certificate was valid.

*Appeal from Adams Circuit Court.*

THURSDAY, APRIL 19.

ACTION in equity to set aside a tax deed and quiet plaintiffs' title. The plaintiffs' land was sold at tax sale to the defendant, Stephenson. He assigned the tax certificates to the defendant Atkins, and Atkins executed a bond for a quit claim deed to the defendant Bixby. After the expiration of the three years from the time of sale, but before the execution of the tax deed, the defendant Stephenson executed a quit claim deed for the consideration of $50 to the plaintiffs, and agreed to deliver to them the tax certificates. They claim that he was the owner of the tax certificates at the time, or if not that he was Atkins' agent with authority to sell or surrender them, and that the tax claim upon the property by reason of the said transaction became extinguished.

Other facts are stated in the opinion. Decree for defendants. Plaintiffs appeal.

*Davis & Anderson*, for appellants.

*John Bixby & Son*, for appellees.

ADAMS, J.—The tax sale took place October 1st, 1866. The tax deed recites that the certificates were assigned by Stephenson to Atkins February 15th, 1867, and the tax certificates purport to show the assignment of that date. This was long before Stephenson's quit claim to plaintiffs, and if the assignment was really made on that day the plaintiffs took nothing by their transaction with Stephenson, unless Stephenson had authority to act for Atkins in the matter, and unless also his act was in such form as to bind Atkins. There is no evidence tending to show when the certificates were assigned other than that above set forth.

The assignment of course took place at the time of delivery. On this point there is no direct evidence whatever. The execution of the tax deed to Atkins would be presumptive evidence that the certificates had been delivered to him before that time, and a delivery being shown we think the presumption is that they were delivered at the date of the assignment. We must consider then that Atkins became the owner of the certificates on the 15th day of February, 1867. The transaction between plaintiffs and Stephenson took place August 2d, 1870. The appellants contend, it is true, that there is evidence tending to show that the certificates had not been assigned at that time.

They introduced Stephenson as a witness, who said: "As to sale of tax certificates I remember by reference to this deed (his deed to plaintiffs), that I sold the certificates to I. R. and Myron Smith, plaintiffs, through Mr. Cummins, of Quincy." But this cannot, we think, be construed as a statement that he owned them at that time. He undertook to sell them and did sell them so far as he could do so. We think he meant nothing more, because he says: "I don't remember whether I assigned the certificates of purchase to C. B. Atkins before or after the sale."

Taking it then as established that Atkins became the owner before the transaction between Stephenson and plaintiffs, we have to inquire whether Stephenson, as Atkins' agent, was authorized to make such transaction.

It appears from the evidence that Stephenson had been

accustomed to invest money for Atkins in purchasing land at tax sale, and where the land was afterwards redeemed he had ·been accustomed to draw the redemption money. Whether the certificates in question belonged to Atkins from the beginning, as being certificates of sales in which he furnished the purchase money, or whether they belonged to Stephenson and were by him sold to Atkins, does not appear. Stephenson says: "The assignment to Atkins was a *bona fide* transaction and for a valuable consideration."

But this statement is consistent with either theory. As to the extent of Stephenson's agency, he says: "During the time I was superintending the investment of tax money for Atkins my authority was general. He told me to look after his business and I did so." To our mind the record fails to show that Stephenson was authorized to release Atkins' interest in land, where the time of redemption had expired.

**1. PRINCIPAL and agent: authority of agent.**

This involved the waiver of a right, or the sale of property. Authority given by a principal to his agent to invest his money, and look after his business generally, would not, we think, enable the agent to sell his principal's property, even such as might be acquired as the result of the investments.

But the evidence fails utterly to show that the certificates in question were issued upon sales in which Atkins furnished the purchase money. The purchases were made in Stephenson's name and the certificates issued to him. During this time Stephenson was buying at tax sales for himself as well as Atkins. The presumption must be that these certificates belonged originally to Stephenson and were by him sold to Atkins. If such was the fact, it seems entirely clear to us that it was not within the scope of Stephenson's agency to re-sell the certificates or release Atkins' interest in the land. If we are correct, we need not inquire whether his attempt to release or convey simply his own interest could have the effect to release or convey Atkins'.

**2. ——: tax purchase.**

The appellants claim that, as they had no notice of the assignment to Atkins, either actual or constructive, at the

time they parted with their money in their transaction with
Stephenson, they ought to be protected. Our atten-
tion is called to section 888 of the Code, which pro-
vides that "in case the certificate is assigned, the assignment
shall be placed on record in the treasurer's office in the regis-
ter of sales." In this case no record was made of the
assignment. But we think that none was necessary. The
assignment was made before the Code, and no provision of
law appears to have been made at that time for a record of
the assignment. By section 778 of the Revision it is provided
that "the certificate of purchase shall be assignable by indorse-
ment, and an assignment thereof shall vest in the assignee or
his legal representatives all the right, title and interest of the
original purchaser."

*3. TAX SALE: assignment.*

The appellants, in support of their theory, cite *McCarver.
v. Nealey*, 1 G. Greene, 360. In that case it was held that a
judgment debtor who had paid the judgment to the plaintiff's
attorney of record should be protected in such payment, not-
withstanding the judgment had been previously assigned, it
not appearing that the judgment debtor had notice of the
assignment. But this decision, to our mind, is not applicable
to the case at bar. It would not be claimed that if the judg-
ment creditor had sold and assigned the judgment, and after-
wards, pretending still to be the owner of it, he had made
another sale and assignment of it to a person, without notice,
that such person would be protected. At the time of the
transaction between plaintiffs and Stephenson they sustained
in contemplation of law the same relation to the certificates
that any other person would have sustained who should have
purchased them and taken a quit claim deed of the land.
Their right of redemption at that time had expired. Such
being the case, we think they should have taken notice at their
peril as to whether Stephenson was still the owner of the cer-
tificates.

After this suit was commenced Atkins executed a quit
claim deed to plaintiffs. The appellants claim that at that
time, if Atkins ever owned the land, he still owned it, and
that he then elected to stand on the penalty of his bond to

Bixby, so that, whether the assignment was made before or after the quit claim deed of Stephenson, the decree of the court below is erroneous.

The decree was substantially that Atkins' quit claim deed to plaintiffs be declared null and void. This was in accordance with the prayer of Bixby, and we think that he was entitled to have the deed so declared. According to the view we have taken of the case, Bixby was the equitable owner of the land at the time this suit was commenced, holding a title bond to the same. The plaintiffs knew that he so claimed, and made him defendant herein. Afterwards they obtained from his vendor the said quit claim deed. We think that they are entitled to no advantage thereby.

AFFIRMED.