R. S. WELLS v. W. W. BATTS et al.

(PLAINTIFF'S APPEAL).

*Husband and Wife—Mortgage by Husband of Crops on Wife's Land—Mixture of Crops, responsibility for.*

1. Where a husband, without the authority, joinder, or knowledge of his wife, mortgaged the crops on her land for supplies, which were expended in making the crops, and the mortagee had notice of the wife's ownership by recitals in the deed, and there was no evidence of any representations made by the wife by which the mortgagee was misled, the mortgagee acquired no right to such crops as against the wife.

2. Acquiescence by a wife for several years previous in the management and control, by her husband, of her lands and the disposition by him of the crops grown thereon, does not, of itself, authorize the husband as her agent to mortgage the crops to one having notice of her ownership.

3. Evidence of the surrender of the rights of the wife to the husband during their joint occupancy of land must be positive and unequivocal in order to confer proprietary control upon him.

4. Where a husband mortgaged the crops growing on his own and his wife's lands, and some of them are so "intermingled and mixed" that they cannot be distinguished or a division made of their proportionate value, the loss must fall upon the wife who permitted her husband to cultivate and intermix them before his death, and his administrators (his sons) to confuse them after his death.

CIVIL ACTION, begun in Superior Court of WILSON County by summons and ancillary proceedings in claim and delivery, December 13, 1889. At June Term, 1890, the case was referred to J. D. Bardin, Esq., whose report of findings of fact and conclusions of law was, in substance, as follows:

On the 7th of January, 1889, W. M. Thorne, husband of defendant M. P. Thorne, executed to plaintiff a mortgage on certain personal property and on the crops to be raised that year on his own and his wife's lands, to secure a note for $594.38 and advances of money and supplies, which plaintiff agreed to make to him to the amount of $1,200, to enable him to cultivate the farm and support the family; and advances were made to the amount of $1,346. W. M. Thorne cultivated the crops, of which he had entire control, until his death, September 29th, 1889. For four or five years before, W. M. Thorne had had like control of the crops made on his and his wife's land, with her consent, and he, to obtain the necessary supplies, had executed like mortgages to plaintiff, and used the proceeds in paying them off. M. P. Thorne, the wife, had notice that the plaintiff furnished the supplies, but not of the mortgages on the crops. Plaintiff received of the crops and personal property mentioned in the mortgage of 1889 enough to reduce the account for supplies to $231.10. Corn to the value of $57.80 was made wholly on land of defendant M. P. Thorne, and the balance of the crop, of the value of $346.18, on the lands of herself and her deceased husband, and were so mixed that it could not be determined what part was raised on the lands of each. That plaintiff and defendant M. P. Thorne did not perceive the intermixture of the crops, nor consent to it, except so far as her consent may be inferred from her permitting her husband, in his life-time, and her son, W. W. Batts, administrator of the husband, after his death, to intermix them. There was no

agreement between husband and wife that he should pay rent, but the crops in controversy are of about sufficient value to pay rent for her land. The referee found as conclusions of law: 1st. That the mortgage of January, 1889, was valid to pass whatever interest deceased husband had in the crops, etc. 2d. That her conduct in respect to the crops did not estop her from claiming reasonable rent, and the corn being shown to have been raised on her land was hers. 3d. That the burden of proof was on her to show the other crops in controversy were raised on her land, and in the absence of proof from her plaintiff is entitled to them. 4th. That having permitted the intermixture of crops in controversy with those to which plaintiff is admitted to be entitled, she is not entitled to them.

Plaintiff excepted to conclusion of law No. 2, that defendant M. P. Thorne was not estopped from claiming the crops, and that she is entitled to the value of the corn.

Defendants excepted to conclusion of law No. 3, that the burden was on defendant Thorne to show how much of the crops were made on her land; and to conclusion No. 4, that she is not entitled to the crops because she permitted the intermixture of her and her husband's crops.

The case was heard upon the report of the referee before *Connor, J.*, at November Term, 1891, who overruled all the exceptions and confirmed the report of the referee in all respects, and gave judgment accordingly, and both plaintiff and defendants appealed.

*Messrs. G. V. Strong, F. A. Woodard* and *Battle & Mordecai,* for plaintiff (appellant).

*Messrs. Woodard & Yarborough,* for defendants.

SHEPHERD, C. J.: (1). It is found by the referee that the *feme* defendant, Mrs. Thorne, "owned in her own right all of

the lands upon which the crops of 1889 were made, except
five-sevenths of the one hundred and twenty-eight acre
tract, which belonged to her husband, W. M. Thorne,
deceased." The plaintiff claims the whole of these crops
by virtue of a mortgage executed by the husband alone.
The mortgage recites the ownership of the wife; and indeed
it is not pretended that the plaintiff did not have actual
notice of her interest in the said lands. Mrs. Thorne did
not know of the execution of the mortgage, and there is
nothing whatever to show that she ever authorized her
husband to dispose of the products of her lands in any
such manner. Neither is there anything to indicate that
she made any representations or did any act by which the
plaintiff could have been misled. The plaintiff, however,
relies upon the fact that from the time of her marriage up
to the death of her husband, in September, 1889, the latter
had "the complete control and management of his and
defendants' lands and the crops made on the same"; that
he expended the proceeds of the crops made from year to
year in the support of the family and the purchase of sup-
plies to enable him to conduct and carry on his farming
operations, with the knowledge of the said wife." It also
appears that the *feme* defendant knew that her husband
obtained supplies of the plaintiff from year to year, but
had no knowledge of the execution of any mortgages on
the crops.

Upon the death of the husband, in 1889, and before all
of the crops of that year had been gathered, the plaintiff
seized the same under legal proceedings, claiming them
under the said mortgage. It appeared that the corn was
raised wholly on the lands of the wife, and his Honor sus-
tained the referee in his ruling that she was not estopped
from claiming the same, or at least so much thereof as

amounted to a reasonable rent for the occupation of her said lands.

If the relation of landlord and tenant existed between the husband and wife, there can be no question as to the correctness of the ruling, as it is well settled that the lien of the landlord prevails over that of a mortgage executed by the tenant for the purpose of obtaining supplies. If the husband was acting as the agent of the wife, the plaintiff would be equally unfortunate, as we are unable to find anything in the record that authorized him to execute a mortgage upon the future income of her property. She did not expressly authorize him to exercise such a power, as she neither knew of nor assented to the execution of this particular mortgage, nor can the authority be implied, as she had no knowledge of the execution by him of similar mortgages during previous years. It is true that she permitted her husband to control and manage her lands for the purpose of supporting herself and the family, and that she had allowed him for several years to apply the crops after they were made to the payment of supplies obtained of the plaintiff. This, however, was not done, so far as she was concerned, by virtue of any lien or mortgage in favor of the plaintiff, and is entirely consistent with the not unusual acquiescence of the wife where she and her husband are in the joint occupation of her lands, the husband receiving, without objection, the income arising from the same. Indeed, the law, recognizing the peculiarity of such an occupancy, has taken care that in such cases the rights of neither party shall be prejudiced by the inequitable conduct of the other. While it recognizes to the fullest extent the right of the wife to the exclusive control of her lands and its products (*Manning* v. *Manning*, 79 N. C., 300), it at the same time provides that where her husband has, during the coverture, received its income without objection, he shall not be liable to

account "for such receipt for any greater sum than the year next preceding the date of a summons issued against him in an action for such income." *The Code*, §1837.

It appears, however, from the above statute that the exclusive receipt by the husband of the income of the wife, even during the entire period of the coverture, does not confer upon him any rights in her property, nor take away his liability to account for its income for at least twelve months preceding a demand. If such an acquiescence in the control of her property and the reception of its income does not, under the statute, exempt the husband from liability to account as above stated, we are unable to see how it can be regarded as conclusive evidence of an implied power to anticipate the income of her property by mortgaging it to one having notice of her rights and thus depriving her of the same for the year preceding the death of her husband. It is very evident from the terms of the statute that the policy of the law requires more than mere acquiescence to so extend the authority of the husband as agent. This view is in harmony with various authors who hold that in such cases a stricter degree of proof is required. Mr. Bishop says: "Under various circumstances an unmarried woman, by permitting another person to possess and use her property, would be bound by any disposition he might make of it on the ground of presumed agency, where, should a husband do the same thing, the agency ought not to be inferred. And the reason is that the relationship of husband and wife implies a certain occupancy of her property by him, not falling within what would be the ordinary course of things if the relationship did not exist." 2 Bish. Married Women, 396 (Ed. 1875).

It is clear that in the present case there was nothing more than acquiescence on the part of the wife. The plaintiff knew of her ownership and it was his own folly

to have taken a mortgage upon the crops from the husband alone. So far from making any representation by which the plaintiff was misled, it appears that she knew nothing whatever of the transaction, and it is clear beyond all question that she is not estopped by reason of fraud. "To estop a married woman from alleging a claim to land (and the rule is the same as applicable to this case) there must be some positive act of fraud, or something done upon which a person dealing with her or in a manner affecting her rights might reasonably rely, and upon which he did rely, and was thereby injured." *Towles* v. *Fisher*, 77 N. C., 437; *Weathersbee* v. *Farrar*, 97 N. C., 106. There being no estoppel by fraud and nothing more than simple acquiescence in the acts of the husband as above stated, we cannot hold that this warranted a finding that the husband was authorized to execute the mortgage in question. Indeed, he does not pretend to have executed it as agent of his wife, nor is there anything in the instrument to show that he undertook to contract in her behalf. This latter view alone would defeat the claim under the mortgage if the plaintiff relied entirely upon the principle of agency. *Loftin* v. *Crossland*, 94 N. C., 76.

The plaintiff's counsel, seeing the force of the foregoing objections, contend that the husband was neither the tenant nor the agent of the wife, but the owner of the land and its products at least for the year 1889. There is nothing but the circumstances to which we have adverted to show that the wife gave him the land for that or any other year, and if, as we have seen, her simple acquiescence was not sufficient to exempt the husband from liability to account, we cannot understand how it could confer upon him a future ownership of the land or its income. It is true that the wife could upon a fair consideration have given the land by parol to the husband for a period less than

three years (*The Code*, §1835), but in view of the reasons we have given, we are quite sure that no such agreement existed. There is an intimation in *George* v. *High*, 85 N. C., 99, that an *express* agreement is necessary to bar the wife's right to an account, and this would seem to apply also to the present case. Moreover, it is to be observed that the finding of the referee does not go to the extent claimed by the plaintiff, as the words "control and management" in themselves imply an agency rather than a proprietary interest in the use of the land. All of the authorities sustain the principle that the evidence of a surrender of the rights of the wife to the husband during the joint occupancy must be positive and unequivocal, and this "is for the reason that (in the general experience of the past at least if not in the philosophy of the present) the wife is under the control of and subordinate to the husband; and neither good law nor sound reason will require the wife to destroy the peace of her family and endanger the marriage relation by open repudiation or hostile conduct towards her husband, in order to save her property from liability for his unauthorized contracts." 2 Bish. Married Women, 396.

To hold that under the present circumstances the wife has stripped herself of the income of her estate or authorized a mortgage of its future products, would produce much confusion respecting the enjoyment of her separate estate in connection with her husband. It is better that the law should require her positive and unequivocal assent than to destroy the domestic tranquility by forcing her, at the peril of forfeiting her rights, to exercise a constant and irritating surveillance over the conduct of her husband in the management and cultivation of her lands for their joint support. No inconvenience can result from such a ruling, as it is quite easy for a party making advances to require that she be joined as a party to the mortgage.

Wells *v.* Batts.

Our conclusion therefore is that the wife is the legal owner of the crops as incident to her ownership of the lands upon which they were raised and it must therefore follow that she is entitled to the possession of the same.

(2). As to the corn there seems to be no difficulty, as it was identified as having been raised wholly upon the lands of Mrs. Thorne. As to the other crops it is found that they are so "intermingled and mixed" with those raised upon the lands of the husband "that it cannot be determined how much was raised upon the lands of said Thorne, deceased, and the *feme* defendant respectively."

The confusion having been effected without the consent of either party it is clear that if the crops can be distinguished, the rights of neither will be affected; nor will this result follow although the crops cannot be distinguished, if, being of the same nature and value, a division can be made of their proportionate value. *Robinson* v. *Holt*, 39 N. H., 557, and the numerous authorities cited.

The referee finds, in effect, that he can neither distinguish the crops nor ascertain their proportionate value. In such a case the law is "that the party who occasions or through whose fault or *neglect* occurs the wrongful mixture must bear the whole loss." *Robinson* v. *Holt, supra.* His Honor very properly ruled that under these circumstances the loss must fall upon the *feme* defendant, as we must infer from the finding of the referee that the confusion was caused by "her conduct in permitting W. M. Thorne, deceased, to cultivate and intermix said crops, and her son, W. W. Batts, administrator of said deceased, to intermix them in the same manner after his death." It is true that this was done by her "tacit" consent only, but it was the result at least of her neglect to see that the crops were not intermixed. She had the control of her lands and the crops thereon, and it was her duty to have kept the crops

distinct from the husband's if she intended to insist upon her legal right to the same. It may be urged that it was equally the plaintiff's duty to see that the husband's crops were properly gathered and stored, but to this it may be answered that he had a right to assume that this would be done by the *feme* defendant and her son, the administrator. She was in possession of her own lands and presumably in possession as tenant in common of those upon which the husband's crops were raised. She and her son seem to have taken control of the crops after the death of her husband, and it is found that she permitted either her husband or son, or both, to mix the same. We must infer that by *permitting* she at least knew of the intermixing and did not object, and this would be "neglect" within the principle of the authority cited.

On the other hand the plaintiff had but a lien on the crops of the husband and no right to the possession of the land, and, in the absence of any knowledge that the crops would be confused with those of the *feme* defendant, he had nothing to incite him to extraordinary diligence. He certainly knew nothing of the intermixing and had no opportunity, as did the *feme* defendant, to object to the same. Taking all of the circumstances into consideration, we think his right is superior to that of the *feme* defendant and that the ruling below must be affirmed. Indeed, upon looking over the whole record, we are inclined to the belief that, after all, this result contributes very greatly to an equitable settlement of the whole controversy.

Affirmed.

### DEFENDANT'S APPEAL IN SAME CASE.

SHEPHERD, C. J.: For the reasons given in the opinion in the plaintiff's appeal the decision in this case must be

Affirmed.