T. T. SAUNDERS, Appellant, v. MARY J. KING *et al*, Appellees, AND S. S. KING, Appellant.

Specific Performance:   CONVEYANCE FROM HUSBAND TO WIFE:   EVIDENCE.   The husband directed a notary to prepare a deed conveying the land in question to his wife and authorized the notary to sign his name thereto and file it for record.   The wife had no knowledge of the deed until after it was recorded, but upon coming into possession of same accepted it, paid the expressed consideration and thereafter claimed ownership, which was acquiesced in by the husband.   Evidence considered and held that the wife took good title as against one to whom the husband afterwards contracted to convey wit out her consent.

Same:   FRAUD:   EVIDENCE.   Evidence examined and held that plaintiff did not occupy the relation of creditor of the husband and that he knew the title was in the wife, therefore he cannot be heard to say that the deed was given to defraud creditors and subsequent purchasers in an action to compel conveyance on the contract of the husband alone.

Agency of Husband:   EVIDENCE OF:   INSUFFICIENCY.   The fact that a wife permits her husband to manage her farm is not sufficient to establish authority in him to make an absolute sale of the same.   Evidence considered and found ins.fficient to establish agency for the purpose of sale.

Unauthorized Contract:   REFUSAL TO PERFORM:   DAMAGES.   Where the husband makes an unauthorized contract of sale of the wife's property and she refuses to ratify it, there can be no recovery of damages for refusal to perform same.

Prayer for Relief:   JUDGMENT:   TENDER:   COSTS.   A prayer for general equitable relief is broad enough to authorize judgment against defendant for the amount paid down on an unauthorized contract, but where a tender of the amount of the judgment was made, both before and after suit, no costs should be taxed to defendant.

*Appeal from Cass District Court.*—HON. O. D. WHEELER, Judge.

THURSDAY, JANUARY 29, 1903.

THIS action was brought by plaintiff to enforce the specific performance of a contract to convey lands. It appears that the record title to such lands had been in the name of defendant Mary J. King for more than ten years previous to the date of the contract alleged, and during all said years the defendants, S. S. King and Mary J. King, who are husband and wife, had resided thereon, with their family, as a home place. It is not claimed that Mary J. King had any direct part in making such contract, the transactions with plaintiff having been conducted solely by her husband. Moreover, she denies having given any authority for the making of such contract, and claims she had no knowledge in respect thereto until some time afterwards, when she repudiated the same, and refused to be bound thereby. The further facts necessary to an understanding of the case are stated in the opinion. The prayer of the petition is in the alternative, judgment for damages being demanded in the event specific performances be not decreed. General equitable relief is also prayed for. There was a decree in favor of defendants denying specific performance, and dismissing the petition as to defendant Mary J. King. Judgment was rendered, however, in favor of plaintiff as against defendant S. S. King for the sum of $50 and interest, and the entire costs of the action taxed at $259.50. The plaintiff and the defendant S. S. King each appeal. *Affirmed* on plaintiff's appeal. *Modified* and *affirmed* on defendant's appeal.

*Bruce & Ziegler* and *Swan & Bruce* for appellant Saunders.

*Follett & Curtis* and *De Lano & Meredith* for appellees and appellant S. S. King.

BISHOP, C. J.—As an initial proposition, it is contended on behalf of plaintiff that at the time he bargained for the lands in question, as claimed by him, the same were in

fact owned by the defendant S. S. King.   It appears that
for many years prior to November, 1890, the record title to
said lands had been in the name of said S. S. King, and he
had been the owner thereof in fact, and had occupied the
same as a family home.   The deed purporting to convey
the same to his wife, Mary J. King, bears date November
3, 1890.   The contention of plaintiff is based upon two
grounds:   First, that the deed from S. S. to Mary J. King
was never in fact executed or delivered; and, second, that
if executed and delivered, it was void, because made and
received with intent to defraud creditors of S. S. King, and
subsequent purchasers of the property.   We take up these
grounds of contention in  their  order.

    The facts bearing upon the execution and delivery of
the deed are as follows:   Without the knowledge of his
wife, S. S. King went to the office of a notary in Anita,
<span style="font-variant: small-caps">1. Convey-<br>ance from<br>husband to<br>wife:  evi-<br>dence.</span> and directed the  preparation of a  general
warranty deed conveying the lands from him-
self to his wife.   He says that he was expect-
ing to make a trip north, and "I wanted her to have
control of the whole thing."  A deed was drawn up ac-
cordingly, reciting as the consideration love and affection
and one dollar in hand paid.   King says he signed such
deed in the office of the notary, and made acknowledg-
ment and directed the recording thereof.   Taking the
testimony of the notary and of the witnesses making com-
parison of handwriting, and this may be doubted.  It is
more probable that King left Anita and went to Omaha,
leaving the deed with the notary unsigned; that from
Omaha he wrote to the notary authorizing the insertion
of his name as grantor in the deed, and directing that the
same be filed for record; that thereupon the notary did so
write in the deed the name S. S. King as grantor, and sent
the instrument for record.   On the deed was a request
that it be returned to the notary when recorded.   The
notary also testifies that within a day or so after the deed

was sent for record S. S. King came back from Omaha, and
inquired if the deed had been completed and recorded as
he had directed, and, upon being told that it had, expressed
himself in approval, and as satisfied. Mary J. King was
not advised of the making of the deed for some little time
thereafter. It seems, however, that the deed came to her
possession after being recorded, and she says she paid the
consideration of one dollar. Thereafter she claimed to be
the owner of the lands, and her ownership thereof was at
all times acquiesced in by her husband.

For the purposes of this action we think it must be
held that Mary J. King took title to and became the owner
of the lands in question under such deed. Conceding that
S. S. King did not, in person, sign the deed, yet that he
lawfully authorized another to sign his name for him can-
not be the subject of question. That he did so authorize
the notary, and that he afterwards ratified and approved
of the act of the latter, are facts fairly to be gathered
from the record. It is not material that the deed was
made without the previous knowledge of the grantee
named therein. It is sufficient that when it did come to
her hands, she accepted it, and thereafter asserted title
thereunder. *Bank v. Haney,* 87 Iowa, 101; *Palmer v.
Palmer,* 62 Iowa, 204. The case of *Davis v. Davis,* 92 Iowa,
147, relied upon by plaintiff, is not in point. In that case
the facts appearing were that Nelson Davis, owner of the
land, being threatened with litigation, executed a deed,
and, having procured it to be recorded, took it into his ex-
clusive possession, where it afterwards remained. The
court expressly finds that such deed was executed for no
other purpose than to avoid the effect of the impending
litigation, and that there was no intention to pass title.
Whether the deed in question is open to attack for want
of a proper acknowledgment, we need not inquire, inas-
much as the plaintiff, at the time of making his alleged
contract, was well advised that the record title to the

lands appeared to be in Mary J. King, and that both she and
her husband were asserting her full ownership of such lands.

The second ground of contention, based upon the
allegation that the deed was made with intent to de゛ aud,
is not tenable in any sense.   It does not clearly appear
2. SAME: fraud:   that S. S. King was indebted in any consider-
evidence.         able sum at the time the deed was made.
It does clearly appear that all indebtedness asserted
against him was paid.   But, conceding the facts to have
been otherwise, the plaintiff in this case never stood in
the relation of a creditor, and how he can be heard to
assail the deed in the capacity of one is not revealed by
the argument before us. . Nor are we otherwise able to
find any support for such a position.   So, too, we are at a
loss to determine just what is meant by plaintiff in assert-
ing that the deed was intended to defraud subsequent pur-
chasers.   Unfortunately the field of fraud is a broad one,
and we are forced to admit that it is prolific with many
schemes to entrap the unwary.   Undoubtedly, there are
many instances where a subsequent purchaser is the ob-
ject of unrighteous plans, and the victim of fraudulent
practice.   However, we have carefully read the many
pages of argument in this case to ascertain upon what
grounds, general or in particular, the plaintiff has the
right to complain,—in what way he has been inveigled
into acting contrary to his own interests or misled to his
injury, and our reading has been in vain.   The plaintiff
knew that the record title to the lands was in the name of
Mary J. King.   He knew when he dealt with S. S. King
that her consent was absolutely necessary to the passing
of title.   The mere statement of such facts fully disposes
of plaintiff's contention.   And this would be true, even
conceding that a fraudulent purpose, as asserted, entered
into the execution and delivery of the deed under which
Mrs. King claims title.

II.   Plaintiff's action is based upon an oral contract
to convey.   His contention is that S. S. King made to him
a proposition to sell at a stated price, which proposition
he accepted, whereupon he paid to said S. S.
King the sum of $50, and took a receipt in
writing as follows: "Anita, Iowa, 11—5—
1900.   Received from T. T. Saunders $50, part payment
on the 240 acres now owned by and resided upon by S.
S. King, in Cass county, Iowa, and this day contracted to
be sold to said Saunders by said King. [Signed] S. S. King."
It is claimed by plaintiff that S. S. King was acting in the
premises as the authorized agent of his wife and codefend-
ant.   The point is made in the petition, and some evidence
was introduced tending to support the same, that the in-
tention and understanding was that the receipt set out
above should be signed by S. S. King for himself, and also
in the name of his wife, by him as her agent, and reform-
ation of the instrument is included in the prayer of the
petition.   The point is not contended for in argument,
and may therefore be regarded as waived.   Looking into
the record, we find that plaintiff and the defendants King
had for years lived in close proximity to each other.   Mrs.
King and Mrs. Saunders are sisters, and there had been
the usual association between the families.   As we have
already stated, plaintiff knew that the title to the land in
question stood in the name of Mrs. King, and that she
claimed to be the owner thereof.   It is said, however, that
she had permitted her husband to manage the farm, dis-
pose of the products thereof, and handle the proceeds as
he saw fit, depositing the same in bank in his own name,
etc.   Admitting all this, there is no warrant for saying
that therefrom the conclusion can be drawn that he had
authority to contract for and to sell the farm itself.   A
wife may permit her husband to manage and control her
property, and there are cases undoubtedly where she may
be bound by his contracts connected with or growing out

3.  AGENCY of husband; evidence of: insufficiency.

of such control and management. It does not follow, how-ever, that, in the absence of express authority, the husband may bind his wife by contract entered into by him without her knowledge or consent, looking to an ab-solute disposition of her property. *Vescelius v. Martin*, 11 Colo. Sup. 391 (18 Pac. Rep. 338); *Wells v. Batts*, 112 N. C. 283 (17 S. E. Rep. 417, 34 Am. S. Rep. 506); *McLaren v. Hall*, 26 Iowa, 297; *Rees v. Shepherdson*, 95 Iowa, 431; *Smith v. Stephenson*, 45 Iowa, 645. The evidence does not disclose the fact that Mrs. King had given her husband specific authority to enter into a contract for the sale of the farm. On the contrary, each testifies that the subject had never been discussed between them. The only evi-dence tending to show that S. S. King was held out as having any direct authority to act for his wife is found in the testimony of the plaintiff himself. He says that on one occasion, while driving along the highway, he was overtaken by Mrs. King, and that as she passed he spoke to her about the farm, and was told, in substance, that any deal he might make with her husband would be all right. This statement is denied *in toto* by Mrs. King, and her denial must be accepted, inasmuch as the burden to establish agency is on the plaintiff. We conclude that the contract relied upon by plaintiff was without authority, and that the trial court was right in denying a decree for specific performance.

III. No contract on the part of Mrs. King or by her authority having been shown, it follows that no award of damages could be made as against her. The court below

4. UNAUTHOR-
IZED con-
tract: refusal
to perform:
damages.

gave judgment as against S. S. King for the sum of $50, being the amount of money paid him by plaintiff. It is urged in argument that in addition to said sum plaintiff should have recov-ered the damages which he claims were sustained by him on account of the failure to carry out the alleged contract. We do not think this contention can be sustained. The

evidence of plaintiff and S. S. King is in conflict in respect to what was said at the time of making the contract upon the subject of the authority of said King to act. King says that he distinctly stated that whatever agreement was made would be subject to the approval of his wife, while plaintiff says that he (King) declared that he had full authority to act. At the time, King was on his way to the Black Hills, and a careful reading of the evidence sat-isfies us it was the understanding that upon his return the matter was to be referred to Mrs. King for her approval, and a formal contract drawn up. Certain it is that she was not asked to approve of the contract until after the return of her husband, and she then refused to be bound by it. It follows that under such circumstances there could be no recovery of damages.

IV.   The appeal of the defendant S. S. King is from the judgment rendered against him for the costs of the action.   Such judgment was undoubtedly predicated upon the theory that, as plaintiff was entitled to recover the sum of $50 paid by him to defend-ant, the costs of the suit should follow as a matter of course.   On the part of the defendant it is con-tended that a judgment for said sum could not be rendered against him properly for the reason that the petition con-tains no specific prayer therefor.   We answer this conten-tion by holding that the prayer for general relief is broad enough to authorize such judgment to be entered.   It ap-pears, however, that before suit was brought a tender of said sum of $50 was made by defendant to plaintiff and refused; also, with his answer defendant repeats the tender and brings the sum into court to keep his tender good.   In view of such tender, and of the fact that no part of the costs were made in an attempt to recover the said sum of $50, it was error to so assess the same to the defendant.   It follows that on plaintiff's appeal the decree must be affirmed, and on defendant's appeal the

*5.  PRAYER for relief: judgment: tender: costs.*

decree is modified so far as to tax the costs of the action to plaintiff; otherwise it is affirmed. The cause is re-manded for further proceedings in harmony with this opinion.—AFFIRMED on plaintiff's appeal. MODIFIED and AFFIRMED on defendant's appeal.