ELIZA BISHOP v. LEE MINTON et al.

*Ejectment—Estoppel—Findings of Jury.*

1. Where, in ejectment, the jury found that "plaintiff did advise or induce defendant to buy the land before he purchased the same," such finding is not sufficient to create an estoppel against plaintiff when it is not also found that plaintiff knew of her title when she gave the advice, or that defendant did not know of plaintiff's title, or that he was deceived by such advice.

2. A finding by a jury that defendant in ejectment did not purchase from another in good faith and without knowledge of plaintiff, is not inconsistent with another finding that plaintiff advised or induced the defendant to buy the land before he purchased it.

CIVIL ACTION for recovery of land, tried before *McIver, J.,* and a jury, at Fall Term, 1892, of WILKES Superior Court.

Plaintiffs allege that they are owners of a certain tract of land, and demand possession, etc.

The defendants aver, among other things, that they and those under whom they claim have been in actual possession of the land under known and visible boundaries for more than forty years before suit brought, and set up the statute in bar of plaintiffs' right to recover.

The heirs and executor of James Calloway were subsequently made parties plaintiff, and by leave of the Court the pleadings were amended as follows:

The plaintiffs allege as follows:

1. That they are the daughters of Lovelace Minton, who died in Wilkes county sometime during the year 1863 intestate, and that the husbands of the plaintiffs are made defendants in this cause because they refused to join as plaintiffs.

2. That sometime about the year 1862 the said Lovelace Minton became indebted to Dr. James Calloway in the sum

of about two hundred dollars, and to secure said sum of money Lovelace Minton executed to the said Calloway a conveyance of a tract of land in Wilkes county, adjoining the lands of Henry Eller, Benjamin Huffman, John R. Bishop, Phineas Eller and others, on the waters of Lewis Fork, and containing, by estimation, 200 acres of land.

3. That said conveyance was for the purpose of securing the said sum of money to said Calloway, and was understood between the parties, and intended at the time of its execution, to be only a mortgage for the security of said indebtedness, but by the mistake of the parties it was drawn as a deed in fee on its face, with no conditions or stipulations therein showing its true character.

4. That afterwards the said Lovelace Minton paid off the said sum so due said Calloway, and for which the said deed to Calloway was executed as a mortgage, and the said Calloway surrendered said deed to the said Lovelace Minton, and executed to said Lovelace Minton a deed in fee for the said land.

5. That soon thereafterwards said Lovelace Minton died, and the said James Calloway went to the house of said Lovelace Minton, on said land, after his death, claiming to be the friend of the widow and expressing a desire to administer upon the estate of the said Lovelace Minton, and took into his possession the original deed executed by Minton to Calloway, and also the deed subsequently executed by Calloway to Minton, and died without ever returning the same, and the said deeds, as the plaintiffs allege, upon information and belief, went into the possession of the defendant George H. Brown, executor of said Calloway, and are now either in his (Brown's) possession, or have been burnt or destroyed, and have never been registered.

6. The defendants Lee Minton and Thomas Griffin and Finley Eller are in the actual unlawful possession of said

land,'claiming the same under the defendant Brown, executor of James Calloway, and the defendant G. H. Brown is the executor of said James Calloway, and the other defendants are the heirs at law and devisees' of the said James Calloway.

The plaintiffs, therefore, demand judgment, against the said G. H. Brown, that he be directed to surrender the deed from the said James Calloway to the said Lovelace Minton, that the same may be registered, and if said deed has been lost or destroyed, and is not in the possession of said G. H. Brown, executor, that the defendants, the heirs at law of James Calloway, be directed, by a decree of the Court, to execute said conveyance to these plaintiffs.

2. That the plaintiffs have judgment against the said defendants Lee Minton, Thomas Griffin, Finley Eller for the possession of the land, for $500 as damages, and for such other and further relief as the facts will warrant.

The defendant G. H. Brown denied all of the allegations of the complaint and disclaimed any interest in the land.

The defendants Lee Minton and Phineas Eller in their answer admitted that the plaintiffs are the daughters of Lovelace Minton, deceased, and alleged that their husbands refused to be joined as plaintiffs in this action for the sole and express purpose of enabling the plaintiffs to bring this suit *in forma pauperis,* and to avoid the possibility of paying any cost; disclaimed sufficient knowledge, etc., as to allegations of paragraphs 2 and 3 of the complaint and denied those of paragraphs 4 and 5. They admitted possession, but denied that it was wrongful, and asserted that they were *bona fide* purchasers for value, without notice of any fraud on the part of said Calloway.

They further pleaded open and notorious possession of the lands for more than thirty years before suit, seven years,

possession under color of title by known and visible bounds and the three years' bar.

The issues submitted to the jury and the responses thereto were as follows:

1. Did James Calloway surrender the deed executed to him by Lovelace Minton to the lands in controversy before the registration, as alleged? Answer. Yes.

2. Did James Calloway execute a quitclaim deed for said lands to Lovelace Minton, as alleged? A. Yes.

3. Did James Calloway subsequently obtain rightful possession to the said deed to the lands in controversy? A. No.

4. Did Leonidas Minton purchase said land from L. L. Witherspoon, administrator *de bonis non* of Griffin Summerlin, and from George Brown, executor of James Calloway, in good faith, without knowledge of claim of plaintiff? A. No.

5. Did the plaintiff advise or induce the defendants to buy the land before he purchased the same? A. Yes.

6. What is the annual rental value of the lands described in the complaint? A. Fifty dollars.

The Court rendered judgment that Eliza Bishop, the plaintiff, as an heir at law of Lovelace Minton, is entitled to one undivided one-fifth part of the land, and entitled to be let into possession, etc.

On the verdict of the jury the defendants asked:

· 1. For judgment dismissing plaintiffs' action, which motion was refused by his Honor. Defendants excepted.

2. For a new trial, for that the findings of the jury were inconsistent, and no judgment ought to be pronounced, which motion his Honor refused. Defendants excepted.

From the judgment in favor of plaintiff Eliza Bishop, declaring her to be entitled, as an heir at law of Lovelace Minton, to one undivided one-fifth part of the land, and

ordering that she be let into possession, etc., the defendant
Lee Minton appealed.

*Messrs. Glenn & Manly,* for appellants.
No counsel *contra.*

BURWELL, J.: If the first four issues with the findings of
the jury are read in connection with the pleadings, we have
the following narrative of facts: The land in controversy
was owned by one Minton, of whom the plaintiff Eliza
Bishop was a daughter.   Minton conveyed it to James Cal-
loway, who surrendered the deed without having it regis-
tered, and also executed a quitclaim deed therefor to Min-
ton, thus putting the title back in him and his heirs.   James
Calloway, if he subsequently obtained possession of the
deeds, got such possession not rightfully.   The defend-
ant Leonidas Minton purchased the land from the executor
of James Calloway and another with knowledge of plain-
tiff's claim thereto as one of the heirs of her father, and
this purchase was not made " in good faith."

Thus it appears that both parties claim title from the
same source—the ancestor of plaintiff—and that since by
the finding of the jury James Calloway is shown to have
surrendered what title he had, defendant, who claims
through him, cannot hold the land against the plaintiff
unless he can show some title derived from her or good
against her by estoppel.   The fifth issue seems to have been
submitted at his instance, so that he might establish an
estoppel against her, though it had not been pleaded by
him.   This was his defence.   If he designed to defeat the
plaintiff's recovery in this way, it was incumbent on him
to have the jury find such facts as would constitute an
estoppel against the plaintiff, a married woman.   This he
has not done.   We are informed by the verdict that the

plaintiff did "advise or induce the defendant to buy the land before he purchased the same" (fifth issue), but we do not know that plaintiff knew of her title when she gave this advice, or that defendant did not know of plaintiff's title, or that he was deceived by this advice. Hence the facts were not found from which it could be adjudged that plaintiff was estopped, even were she a *feme sole.* *Holmes* v. *Crowell,* 73 N. C., 623; *Loftin* v. *Crossland,* 94 N. C., 76; *Estes* v. *Jackson,* 111 N. C., 145. Therefore it is not necessary to consider under what circumstances, if any, a married woman may be deprived of her realty by estoppel. The defendant cannot be allowed to delay plaintiff in the recovery of her land because he has failed to allege, as well as prove, facts essential to the validity of his defence.

We see no reason why the action should have been dismissed upon defendant's motion, nor do we think the answers to the fourth and fifth issues inconsistent so as to entitle defendant to a new trial.

No Error.                                      Affirmed.