T. J. CARTER AND T. R. PRATT v. CALVIN REAVES ET ALS.

(Filed 28 October, 1914.)

1. **Appeal and Error—Assignments of Error—Rules of Court.**

   Where error is assigned on appeal as to admissibility of evidence, referring to the page of record, or to the charge of the court, referring only to appellant's certain numbered exception, it does not come within the requirements of the rule of the Supreme Court, and will not be considered.  The evidence excepted to should be set out in the assignment of error, as also the paragraph of the charge which is relied upon for error.

2. **Marriage — General  Reputation — Evidence—Corroborative—Communications with Deceased—Interpretation of Statutes.**

   Where a party claims lands as the heir at law of his deceased father, and the question arises as to whether his father and mother were man and wife, it is competent to show the fact of marriage by evidence of general reputation thereof in the family and neighborhood, and it is also competent for a witness to testify that he had heard the mother, since deceased, say that the father was her husband, as corroborative of the evidence of reputation, and in mentioning those whom the witness testi-

fied he had heard say they were man and wife; and it is further held that the evidence is not prohibited by Revisal, sec. 1631, as a communication with a deceased person, the mother being dead and the *locus in quo* descending from the father.

**3. Appeal and Error — Assignments of Error—Trials—Instructions—Special Requests.**

Error assigned for a failure of the court to instruct the jury upon certain presumptions of law arising from the evidence on a matter at issue will not be considered, for if fuller instructions are desired they should be set out in a prayer for special instruction.

**4. Married Women—Coverture—Adverse Possession—Interpretation of Statutes.**

Coverture is not now a defense in bar of the running of the statute of limitations, since 13 February, 1899. Revisal, sec. 363.

APPEAL by defendants from *Rountree, J.,* at September Term, 1913, of PENDER.

*R. G. Grady and John.D. Bellamy for plaintiffs.*
*C. D. Weeks and Stevens & Beasley for defendants.*

CLARK, C. J. The appellees moved to dismiss the appeal for that the alleged errors are not properly assigned. Upon examination we find that but a few of the assignments of error are in accordance with the requirements. For instance, assignment 2 is that the court "erred in admitting the question of F. R. Brink in regard to his claim to possession." This gives us no information and leaves the Court to hunt through the record. It is no cure to this defect that we are referred to the page where we might find the evidence referred to. The same is true as to assignments of error 1, 3, 4, 5, 7, 8, 9, as to evidence which is not set out in the assignments.

Assignment of error 13 is: "The court erred in giving the jury the charge which is excepted to as defendant's 19th exception, on page 34, as there shown in the bracket." This simply refers us to the record, when counsel should have selected the paragraph of the change objected to and set it out in his "assignment of errors." The same is true of assignments 14, 15, 16, 17, and 18.

These matters have been so often called to the attention of counsel that it is strange indeed that the rules as to presenting error on appeal should be thus disregarded in any case. As late as *Wheeler v. Cole,* 164 N. C., 380, the Court again said that "it would not consider exceptions not set out in compliance with the plain requirements of our rules as construed by this Court in *Davis v. Wall,* 142 N. C., 450; *Marable v. R. R., ib.,* 564; *Lee v. Baird,* 146 N. C., 361; *Thompson v. R. R.,* 147 N. C., 412; *Ullery v. Guthrie,* 148 N. C., 417; *Smith v. Mfg. Co.,* 151 N. C., 260; *Pegram v. Hester,* 152 N. C., 765; *McDowell v. Kent,* 153 N. C.,

555; *Jones v. R. R., ib.,* 419; *Hobbs v. Cashwell,* 158 N. C., 597." The
Court then added: "This rule has been frequently called to the atten-
tion of counsel throughout a long period of years. It has been sub-
stantially adopted by all other courts and perhaps in all of them it is
enforced more rigidly than with us. It bears equally on all, and should
be observed, as it is intended for the benefit of litigants and counsel as
well as for the better transaction of business in this Court and the more
intelligent disposition of causes. It is easily complied with, if our
brethren of the Bar will endeavor to meet its requirements. There is
no hardship imposed by it, unless we follow the implied suggestion that
it be not enforced in some cases, whereas it should be enforced in all
equally and with absolute impartiality. If we should fail the least in
this respect, it would, of course, be intolerable. But it is sufficient to say
that it is a rule of this Court of many years standing, and while it con-
tinues to be a rule it must be enforced alike as to all." This case has
been cited since with approval in *Steeley v. Lumber Co.,* 165 N. C., 32,
and the ruling therein has been applied in a great many cases, besides
those above quoted, and without writing any opinion.

As we have had occasion to say at this term of the Court, in *Land Co.
v. McKay,* the rules of this Court are not considered sacred nor the best
of all possible rules, and when we discover defects in them they are
changed from time to time to take effect prospectively. But as long as
they remain unaltered they are, in our judgment, required in the interest
of the administration of justice, and must be enforced—reasonably, of
course, and in accordance with their intent, but impartially as to all.

The only assignments that are properly made are those numbered 6,
10, 11, 12, and 15, and as announced from the Bench in passing upon
the motion of the appellee to affirm the judgment, we shall consider
only the assignments that are properly made. Assignment of error 19
is merely formal for error in refusing to grant a new trial and in ren-
dering the judgment. We have, however, looked through these defective
assignments, and find nothing which could have changed the result, if
such assignments had been properly made.

This action is for the recovery of land described in the complaint.
Both parties claim under Fred Lovin. The plaintiffs claim under a
mortgage made by Lovin to Satchwell on 27 October, 1855, and under
a deed made under foreclosure at Fall Term, 1859, and then under
mesne conveyances to the plaintiffs. The suit in foreclosure was insti-
tuted after the death of Lovin, the mortgagor, by his three daughters by
his wife, Dorcas Brewer, to whom the plaintiffs allege and the jury find
that the said Lovin was legally married.

About one year prior to the commencement of this action the defend-
ant Jane Reaves and her husband built a shanty on the land in con-

troversy and began to cut timber, whereupon the plaintiffs resorted to this action. She contends that she is the daughter of Fred Lovin and Mag. Pridgen, his second wife, and that she is the only lawful heir; that she married before she was 21, and that she was not made a party to the suit to foreclose.

It is not denied that Jane Reaves is the child of Fred Lovin by Margaret Pridgen, to whom he was formally married in 1845; but the plaintiffs contend that said marriage, though performed in a legal manner, was bigamous and void, because there was a prior subsisting marriage between Fred Lovin and Dorcas Brewer. The plaintiffs did not produce direct evidence of Lovin's marriage to Dorcas Brewer, but there was abundant evidence of the reputation of such marriage in the family and in the neighborhood and of cohabitation in Pitt County, where they lived, and that they separated and that Fred Lovin went to New Hanover, where subsequently, in 1845, as the defendants proved, he was married by the forms of law to Margaret Pridgen. There was no evidence of divorce, however. Fred Lovin died about 1856. Jane Reaves was born in 1853 and was married in 1869, at the age of 16, to her codefendant, Calvin Reaves. Fred Lovin lived on the land at his death. The plaintiffs also relied on adverse possession of those under whom they claimed.

Of the exceptions properly assigned as error, No. 6 is for alleged error in permitting the witness Christine Manning to state that she had heard "Dorcas Brewer say that Fred Lovin was her husband." No. 10 is for permitting the witness J. J. Stokes to state that he heard Dorcas Brewer make the same statement. No. 12 is for the refusal to strike out the above evidence, under Rev., 1631. This evidence was competent for the witnesses in corroboration of their testimony of reputation and cohabitation and in mentioning those whom they had heard say that Lovin was married to Dorcas. 4 Chamberlain Ev., sec. 2932. Section 1631 does not apply, for Dorcas Brewer died in 1878, and the plaintiffs are not claiming under her, nor was she, of course, a witness in the cause.

Assignment 11, for refusal to nonsuit, cannot require discussion. Assignment 15, for "failure to instruct the jury in reference to the presumptions of law as to the validity of the marriage between Fred Lovin and Margaret Pridgen," cannot be sustained. If the defendants desired fuller instructions, they should have so prayed the court.

It is hardly necessary to consider the defense of adverse possession under color. This action was brought 16 September, 1907, and the statute removing the disability of coverture and providing that coverture should not be a protection against the running of the statute of limitations took effect 13 February, 1899. Rev., 363. The evidence

is that the defendants entered upon the land "about one year" before this action was begun, which was, therefore, more than seven years of adverse possession after the passage of the statute.

No error.