JESSIE B. EVERETT v. M. W. BALLARD ET ALS.

(Filed 12 September, 1917.)

**Married Women—Separate Realty—Contracts—Breach—Damages—Constitutional Law—Statutes.**

A married woman is liable in damages for the breach of her written contract to convey her separate realty, though made without the written consent of her husband. Const., Art. X, sec. 6; Laws of 1911, ch. 109.

ALLEN, J., concurs in result; BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by plaintiff from *Whedbee, J.,* at June Term, 1917, of MARTIN.

On 14 October, 1914, the defendant Nannie B. Roberson, wife of W. R. Roberson, contracted in writing, without written assent of her husband, with the plaintiff to sell him a tract of land, her separate property, at the price of $2,500. After the delivery of said contract the defendant Nannie B. Roberson, with the written assent of her husband, conveyed the land to the defendant M. W. Ballard. This action is brought against said Nannie B. Roberson to recover damages for the breach of said contract upon her part and against her husband and M. W. Ballard for conspiracy with her to damage the plaintiff by breaking said contract.

The judge below being of opinion·that the failure of the husband of Nannie B. Roberson to give his written consent to the contract rendered it void and entered judgment of nonsuit. Appeal by plaintiff.

*Dunning & Moore for plaintiff.*
*Harry W. Stubbs for defendants.*

CLARK, C. J. The change in the property and contract rights of married women made by the Constitution of 1868 and the laws since is so complete that no aid can be had by reference to the decisions made before such changes, and their present status may be thus briefly summed up:

*Property Rights.*—The Constitution, Art. X, sec. 6, provides that all the property, real and personal, of any married woman acquired before or after marriage shall not be liable (as formerly) to the debts or control of the husband, but shall be "The sole and separate estate and property of such female . . . and may be devised and bequeathed and, with ·the written assent of her husband, conveyed by her as if she were unmarried."

It will thus be seen that a married woman has the absolute power to dispose of her property by will, and that she can convey it "with the written assent of her husband," which·does not restrict her freedom in the disposition of her personal property, as conveyances apply only to ·realty.

The Constitution requires the privy examination of a wife only as to the conveyance of her husband's allotted homestead. Const., Art. X, sec. 8.

The statute which requires her privy examination as to the conveyances of her husband's property, so as to release her right of dower, is unquestionably a matter for the Legislature, which confers, and which can reduce or increase, or deprive her of dower at will. Hence, from 1784 to 1868 (during which time the common-law right of dower was repealed), the wife was not required to join in conveyances by the husband of his realty. The only debatable question has been whether the Legislature can now require the privy examination of the wife in conveyances by her of her own realty, since the Constitution guarantees that she can convey "as if she were unmarried,. with the written assent of her husband."

*Contractual Rights.*—Since the Constitution of 1868 there have been successive changes by sundry statutes and by decisions of the Court towards full freedom of contract by married women to correspond with the freedom of ownership bestowed by the Constitution. The complication of our decisions was admirably summed up in a table of several

2—174

pages of fine print prepared by Professor Mordecai, which is set out in *Vann v. Edwards,* 128 N. C., 431-434, inclusive. For this "codeless myriad of precedent" the Martin Act, Laws 1911, ch. 109, substituted a simple statute that, "subject only," the act says, to Rev., 2107 (which retains the former requirements as to contracts between husband and wife), *"Every married woman shall be authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried,"* with a further condition that *"conveyances* of her real estate shall not be valid without the written assent of her husband, as required by the Constitution, and a privy examination to execution of *the same* as now required."

There is in this statute no requirement of the written assent of the husband, nor of the privy examination of the wife, as to any *contract* unless between her and her husband.

The "Martin Act" emancipates a wife, absolutely as to all *contracts,* except with her husband, as to which there must be her privy examination and the approval of the contract by a justice of the peace.

The requirement of privy examination is exacted as to no other contract, but is required in conveyances by the wife still in addition to the "written assent of the husband," which alone is required by the Constitution.

This is the plain letter and intent of the statute, and was so held in *Warren v. Dail (Hoke, J.),* 170 N. C., 406, where damages were held recoverable against a married woman for breach of a contract to convey land, as the Court was unable to decree specific performance owing to the refusal of his written assent by the husband. That case, often cited since, is conclusive of the liability of the wife to damages for breach of this contract. To the same effect are the decisions of other States on similar statutes. *Wolf v. Meyer,* 76 N. J. L., 574; *Davis v. Watson,* 89 Mo. App., 15, and many others.

One cannot make a conveyance of land except in writing, but it has never been held that on breach of an oral contract damages cannot be recovered under which the land can be sold, "because that would permit to be done indirectly what cannot be done directly." When the Legislature authorized a married woman "to contract and deal so as to affect her *real and personal* property in the same manner, and with the same effect, as if she were unmarried," it authorized contracts for breach of which they would be liable as fully as if they had remained unmarried. The act so states. The Legislature was of opinion, evidently, that a woman did not lose her intelligence and her capacity to contract when she married, and in making valid her *contracts* after that date it was intended that her property, "real *and* personal," should be liable for breach of the same; otherwise, instead of saying to "affect her real and

personal property in the same manner and with the same effect as if she were unmarried," it would have said "to affect her personal property only."

The Constitution emancipated married women fully as to their property rights, save only the restriction (retained in very few States) of the husband's assent to conveyances. If it had intended to extend this restriction to "contracts" it would have said so. Certainly there was no restriction upon the power of the Legislature to declare married women as capable of making contracts as their single sisters or their brothers.

To what purpose should the Legislature enact that a married woman "can contract as if single" if she is not liable for breach of such contract? Who would accept such contract?

Reversed.

ALLEN, J., concurs in result.

BROWN, J., dissenting: I agree with the Court that the opinion of the majority in *Warren v. Dail,* 170 N. C., 406, is controlling in this case.

In my dissenting opinion in *Warren v. Dail* (concurred in by *Justice Walker*), I said: "If any legal question has ever been settled by repeated decisions of this Court, it is that the deed or contract of a married woman charging her real estate in this is a nullity unless her husband joins and her privy examination is taken," citing numerous cases.

It is admitted in this case that W. R. Roberson, the husband of Nannie R. Roberson, did not give his written assent to the contract to convey her land to plaintiff. It is admitted that the contract cannot be specially enforced because executed by the wife alone. It is now proposed to recover damages against the wife for breach of her contract and to sell her separate estate to pay the judgment. If this is not "whipping the devil around the stump," I am at a loss to know what is.

I do not think the Martin Act permits, or that its author ever contemplated, that a married woman should be permitted to enter into a contract of any sort affecting her real estate without her husband's consent, by virtue of which she may be mulcted in damages and her property sold to satisfy the judgment.

My views are set out more fully and the authorities cited in the dissenting opinion in *Warren v. Dail,* and I am content simply to refer to that.

Mr. Justice WALKER concurs in this dissent.