BUFORD *v.* MOCHY.

---

BIRDIE S. BUFORD ET AL. V. JOHN MOCHY ET AL.

(Filed 19 April, 1944.)

**1. Estoppel §§ 1, 6b: Deeds § 3: Husband and Wife § 18a—**

Neither a covenant nor a representation on the part of a married woman that she is a *feme sole* will estop her from asserting her incapacity to convey her separate real estate without the written assent of her husband and privy examination as required by statute; and a married woman cannot by her own misrepresentation enlarge her capacity to convey an estate in land.

**2. Husband and Wife § 4c: Deeds § 3—**

While G. S., 52-2, may enable a married woman ordinarily to contract and deal with her property as if she were unmarried and to be bound by estoppel; yet this statute contains a pertinent delimitation making a conveyance of real estate invalid unless with the written assent of her husband, Art. X, sec. 6, of the N. C. Constitution, and privy examination as required by law.

**3. Husband and Wife §§ 4a, 18a, 18b: Deeds § 3—**

One who deals with a married woman is chargeable with knowledge of her disability, and that she can convey her real estate only in the manner prescribed by the Constitution and laws on the subject.

**4. Estoppel § 1—**

Estoppel is applied against those who are capable of acting in their own right in respect of the matter at issue, and not against those under specific disability in respect of it.

**5. Husband and Wife § 4a: Estoppel § 6d—**

To the extent that a married woman is authorized to deal with her property as a *feme sole* she is liable on her contracts and subject to estoppel; but otherwise her disability may not be circumvented or the pertinent legal restrictions of coverture set at naught.

**6. Estoppel § 6d: Husband and Wife § 17—**

A married woman is no more estopped by her acts *in pais* than by her covenant of warranty; and it is only in a case of pure tort, altogether disconnected with contract, that an estoppel against her can operate.

BARNHILL, J., dissenting.

DEVIN and SEAWELL, JJ., concur in dissent.

BUFORD *v.* MOCHY.

APPEAL by defendants from *Bone, J.,* at November Term, 1943, of WILSON.

Civil action in ejectment.

The plaintiffs, who had been married to each other, were divorced in 1936. Thereafter the *feme* plaintiff held herself out and did business as a single woman. On or about 1 September, 1940, she authorized her attorney, Thomas J. Moore, to sell her house and lot in the town of Wilson. Pursuant to this authorization, Moore forthwith negotiated a contract with the defendants for the purchase of the property. They were told that the *feme* plaintiff was unmarried, and at the time the deed was drafted, which was prior to its execution and delivery, she made the statement in the presence of one of the defendants that she was a single woman. In the deed "Birdie S. Buford" is designated "party of the first part."

The sale was consummated 21 September, 1940. In the meantime, however, the *feme* plaintiff had gone to Dillon, S. C., and on 15 September, she and her former husband were remarried. This fact was not disclosed to her attorney or to the defendants at the time of the execution and delivery of the deed, albeit the deed is signed "Mrs. Birdie S. Buford."

On 18 March, 1942, the *feme* plaintiff and her husband instituted this action to recover possession of the land, alleging that the deed of 21 September, 1940, was void, because executed by the *feme* plaintiff, a married woman, without the written assent of her husband or privy examination as required by law. The plaintiffs offer to make the defendants whole by accounting for the purchase money, offsetting improvements against rents, etc.

The defendants admit the allegations of the complaint in respect of the deed, but allege that they were defrauded by the plaintiffs, in that they schemingly withheld from the defendants the fact of their remarriage, and such conduct is set up as a bar to the present action. The precise denomination of the plea is estoppel *in pais.*

On the hearing, "it was admitted . . . that the plaintiff, Birdie S. Buford, is the owner of the land in question unless she is estopped in accordance with the allegations of the answer."

The plaintiffs' demurrer to defendants' evidence on the plea of estoppel was sustained, and the demurrer to the amended answer was not passed upon as it "raises the identical question."

From judgment in favor of plaintiffs, and retaining the cause for an accounting, etc., the defendants appeal, assigning errors.

*L. L. Davenport and A. O. Dickens for plaintiffs, appellees.*
*Connor, Gardner & Connor for defendants, appellants.*

STACY, C. J.   The plaintiff, a married woman, executed a deed to her land without the written assent of her husband or privy examination as required by law.   The grantees allege that during the negotiations she represented herself to be unmarried.   She offers to return the purchase money and to save the grantees harmless, but they decline to surrender possession.   Plaintiff sues in ejectment.   The defendants plead estoppel *in pais.*

Is the plea of estoppel good?   The law answers in the negative.

In *Scott v. Battle,* 85 N. C., 184, where a married woman executed a deed to her land without the joinder of her husband—a case identical in principle with this one—it was said that the plaintiff's right to recover in ejectment could not be questioned as nothing passed by the deed.   It is admitted on the present record that "the plaintiff, Birdie S. Buford, is the owner of the land in question unless she is estopped in accordance with the allegations of the answer."

The question of estoppel was fully discussed in the case of *Williams v. Walker,* 111 N. C., 604, 16 S. E., 706.   There it was said that neither a covenant nor a representation on the part of a married woman that she was a *feme sole* would estop her from asserting her incapacity to convey her separate real estate without the written assent of her husband and privy examination as required by statute, and further that a married woman could not by her own misrepresentation enlarge her capacity to convey an estate; that she would not be allowed to do indirectly what the law prohibits her from doing directly; that she could not do by acts *in pais* what she could not do by deed; that to hold otherwise "would be to introduce into our law an entirely new system of the conveyances of the real estate of *femes covert,*" *Drury v. Foster,* 69 U. S., 24; that, as no remedy could be had upon the void contract, it would be against the policy of the law to allow the same result to be reached through the medium of an estoppel, and that the conclusion reached was in full accord with the constitutional limitation and statutes adopted and enacted for the protection of married women, and not "to permit, much less help, one of them to perpetrate a fraud."   The following from Bishop was quoted with approval: "If a married woman executes a conveyance of land in her maiden name, and dates it back to a time before her marriage, this transaction, however fraudulently intended, does not pass the land by estoppel."   Bishop Law Married Women, sec. 489.   Also the following from *Farthing v. Shields,* 106 N. C., 289, 10 S. E., 998: "Whatever may be the rulings in other states (and they are admitted to be in hopeless conflict), we prefer to adhere to the principle, so often declared by this Court, that a married woman, as to her statutory separate property, is to be deemed *feme sole* only to the extent of the power conferred by the Constitution and laws creating the same."   To allow a

married woman voluntarily to disregard the provisions of the law intended for her benefit would render them nugatory or of no binding effect. "So if a *feme covert,* reciting by her deed that she is a *feme sole,* grant an annuity, this is a void grant, and she shall not be concluded by this recital." *Brinegar v. Chaffin,* 14 N. C., 108.

It is contended, however, that all these earlier cases were rendered apocryphal by the passage of the Martin Act in 1911. G. S., 52-2 (C. S., 2507). Conceding the general broad effect of this statute, enabling a married woman ordinarily to contract and deal with her property as if she were unmarried, *Martin v. Bundy,* 212 N. C., 437, 193 S. E., 831, and to be bound by estoppel, *Tripp v. Langston,* 218 N. C., 295, 10 S. E. (2d), 916, yet the following pertinent delimitation must not be overlooked: "But no conveyance of her real estate shall be valid unless made with the written assent of her husband as provided by section six of article ten of the Constitution, and her privy examination as to the execution of the same taken and certified as now required by law." See *Fisher v. Fisher,* 218 N. C., 42, 9 S. E. (2d), 493; *Capps v. Massey,* 199 N. C., 196, 154 S. E., 52; *Wallin v. Rice,* 170 N. C., 417, 87 S. E., 239.

Admittedly the deed given by the plaintiff to the defendants is void for failure to comply with the terms of the statute. Whatever rights and remedies the defendants may have against the plaintiff in other respects, and she offers to comply with these, it will not do to say the plaintiff has title to the land and yet she shall not have it, or that the defendants may hold it under a void deed. 50 A. L. R., 956. The Constitution and statutes forbid. In no previous decision have we exacted of a married woman divestiture of her land as a penalty for misrepresenting her capacity to convey it. Nor has she been permitted, by any voluntary act, to circumvent or to set at naught the provisions of the law intended for her protection. Equity abhors fraud and diligently seeks to prevent it or to redress it wherever found, but it also follows the law. One who deals with a married woman is chargeable with knowledge of her disability, and that she can convey her real estate only in the manner prescribed by the Constitution and laws on the subject. *Johnson v. Bryan,* 62 Tex., 623. Here, the deed which the defendants took from the plaintiff is signed "Mrs. Birdie S. Buford." Numerous decisions have shaped and cast the law in this jurisdiction.

But supposing the plea of estoppel were held to be good, what would be the result? The plaintiff with title to the land could not recover in ejectment. Yet if perchance she should obtain possession of it, the defendants could not recover in ejectment on a void deed. Thus the law would be in the position of saying to the parties:

> "He may take who has the power;
> He may keep who can."

Such, we apprehend, would ill befit the law. *Mosseller v. Deaver,* 106 N. C., 494, 11 S. E., 529; *Monger v. Lutterloh,* 195 N. C., 274, 142 S. E., 12. It seems incontestable that unless the *feme* plaintiff is estopped by her deed, which is not pleaded, she is entitled to recover. Certainly if the *feme* plaintiff had signed no writing at all, it would hardly be contended she could not recover. G. S., 22-2 (C. S., 988). The deed she did sign has the same effect so far as the land is concerned. It is inoperative as a deed and conveys nothing. *Vann v. Edwards,* 135 N. C., 661, 47 S. E., 784. At no time in this State has a married woman had the capacity to convey her real estate without the written assent of her husband. The limitation is constitutional, Art. X, sec. 6, and the General Assembly is without authority to change it. Similar provisions are not to be found in most of the other state constitutions, *Stallings v. Walker,* 176 N. C., 321, 99 S. E., 25, a circumstance to be borne in mind in assessing the persuasiveness of decisions in other jurisdictions.

It all comes to a narrow compass: By the Constitution and laws of this State a married woman is incapable of making a valid conveyance of her real estate without the written assent of her husband and privy examination duly taken and certified. Hence, she may not convey it by estoppel, or fraudulently divest herself of coverture, if such characterization be preferred. A married woman cannot by a simple declaration or by intentional fraud change her status from *feme covert* to *feme sole* and thus convert a void deed into a valid conveyance of her real estate. Nor will equity close the doors of the courts to her in the assertion of a legal right. Estoppel is applied against those who are capable of acting in their own right in respect of the matter at issue, and not against those under specific disability in respect of it. *Morris Plan Co. v. Palmer,* 185 N. C., 109, 116 S. E., 261. To the extent that a married woman is authorized to deal with her property as a *feme sole* she is liable on her contracts and subject to estoppel, *Council v. Pridgen,* 153 N. C., 443, 69 S. E., 404, but otherwise her disability may not be circumvented or the pertinent legal restrictions of coverture set at naught. *Smith v. Ingram,* 132 N. C., 959, 44 S. E., 643. Equity will go as far as the law permits to make the defendants whole, but it will not impinge on positive constitutional and statutory provisions. Neither the doctrine of clean hands nor any kindred principle on which courts refuse relief is applicable here. "Equity does not demand that its suitors shall have led blameless lives." *Loughran v. Loughran,* 292 U. S., 216, 78 L. Ed., 1219. Moreover, the plaintiff has not come into equity. She is suing at law in ejectment. The law will not allow that to be done indirectly which it has forbidden to be done directly, and if a married woman can, by the simple expedient of misrepresenting her marital status, practically convey her real estate, the very disability which the law has imposed will be removed, and the safe-

guards which it has carefully thrown about her will be broken down and abrogated. *Ray v. Wilcoxon,* 107 N. C., 514, 12 S. E., 443. The law in its protective features is not so easily swept aside.

"A married woman is no more estopped by her acts *in pais* than by her covenant of warranty. This Court has said that no one can reasonably rely upon the acts and representations of a married woman, at least those which are contractual in their nature, as he must know that she is not bound thereby, and 'it is only in the case of a pure tort, altogether disconnected with the contract, that an estoppel against her can operate—' " *Walker, J.,* in *Smith v. Ingram, supra.*

It should be observed that the case is one in which the parties have undertaken to form a contractual relationship with each other, and not one in which a third person has dealt with the property in ignorance of plaintiff's rights. *Bishop v. Minton,* 112 N. C., 524, 17 S. E., 436; Note, 50 A. L. R., 962.

With the above disposition of the case, no cognizance need be taken of the fact that all the evidence comes from a single witness, namely, the attorney who represented the *feme* plaintiff at the time of the execution and delivery of the deed, *McNeill v. Thomas,* 203 N. C., 219, 165 S. E., 712, nor of the circumstance that the defense was dismissed on challenge to the evidence, *Lester v. Harward,* 173 N. C., 83, 91 S. E., 698, rather than on demurrer to the answer. McIntosh on Procedure, 507. Had the result been otherwise, however, these obstacles might have appeared formidable. *Guy v. Bank,* 206 N. C., 322, 173 S. E., 600.

The judgment seems to be in accord with our former decisions.

Affirmed.

BARNHILL, J., dissenting: The *feme* plaintiff, a divorced woman, had been engaged in business under the name "Mrs. Birdie S. Buford." She was in default and her property was about to be sold under foreclosure. In an attempt to save her equity, she contracted to sell her real estate to the defendants, who knew her as a *feme sole.* After arriving at an agreement she leaves the State and remarries her former husband, who did not live in the same town and was unknown to defendants. Upon her return the deed was drafted, and she makes the positive assertion that she is unmarried. She had theretofore, through her attorney, conveyed the same information to the defendants. Defendants accepted the deed and paid their money on the strength of this representation. She again asserts that she is unmarried. She stands by until defendants have converted the property into a safe and profitable investment. She now seeks to recover the property.

Unquestionably, had the plaintiff been a *feme sole* at the time, her conduct as disclosed by this evidence (which we must accept as true on

the question here presented) would work an estoppel against any claim she might assert. Does her coverture cloak her fraud and enable her to maintain her action notwithstanding her unconscionable conduct? This is the real question for decision.

It may be conceded that the results arrived at by the courts in the consideration of this question are far from harmonious. This is due in part to the gradual evolution of the law itself, but most of the difficulty and confusion has arisen out of the difference in approach in seeking to apply the doctrine.

Those courts (notably of Massachusetts) which conceive that the enforcement of the doctrine against married women would operate as a ratification of the conveyance and serve to provide a means of alienation disapproved by statute uniformly conclude that it cannot serve to preclude a married woman.

Conversely, where the doctrine is deemed to be directed to the remedy and not to the right, the plea, on a proper showing, is sustained, the courts holding that coverture does not serve to cloak the fraud of a married woman and enable her to use the processes of the court to reap an advantage growing out of her own wrong. The court does not adjudicate the strict legal right or attempt to validate the conveyance. It merely requires of married women that degree of good faith and fair dealing exacted of all other litigants.

The *ratio decidendi* in these cases is that a court will not stoop to aid any litigant, even a married woman, in the prosecution of a claim bottomed on inequitable or unconscionable conduct.

The majority choose to adopt the view that enforcement of the law of estoppel *in pais* would operate as a ratification of the conveyance and serve to provide a means of alienation disapproved by statute.

I adhere to the view that the doctrine is directed to the remedy and not to the right; and that as a married woman can now contract and sue and be sued as a *feme sole,* there is no sound reason why she should not be as subject to the plea as any other litigant. *Tripp v. Langston,* 218 N. C., 295, 10 S. E. (2d), 916. This, in my opinion, is in accord with the weight of modern authority.

In view of the importance of the question and the sharp conflict of opinion on the subject, I deem it essential that I set forth fully the grounds of my dissent.

The history of the evolution of the law concerning the status of married women in respect to property and as a party to actions in court is interesting and instructive. I refrain, however, from any discussion thereof except to call attention to certain fundamental changes which have a direct bearing upon the decisions of the Court and render some of the older cases inapposite.

By the early common law the identity of a married woman was merged into that of her husband. She could not possess a separate estate or sue or be sued alone. Neither could she be held to her contracts. The motivating purpose of the law was to assure the husband complete control over his wife's estate.

In 1868 her separate estate was assured to her, and she was granted the right to devise and, with the written assent of her husband, to convey the same as if she were unmarried. Const. 1868, Art. X, sec. 6. She was likewise granted the power to sue or be sued when the action concerned her separate estate or was between her and her husband, and the requirement that she prosecute or defend by guardian or next friend was abolished. C. C. P. of 1868, sec. 56. Then, by the Martin Act, ch. 109, Public Laws 1911, sometimes called the Married Woman's Act of Emancipation, she was vested with authority to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried, subject only to the limitations prescribed by sec. 6, Art. X, N. C. Const., and G. S., 52-12 (C. S., 2515).

She is now under no disability in respect to her right to sue and be sued. As to this she is a free agent and may exercise the right in respect to her separate estate as fully as if she were a *feme sole.* C. S., 454; *Lipinsky v. Revell,* 167 N. C., 508, 83 S. E., 756; *Craddock v. Brinkley,* 177 N. C., 125, 98 S. E., 280; *Royal v. Southerland,* 168 N. C., 405, 84 S. E., 708; *Croom v. Lumber Co.,* 182 N. C., 217, 108 S. E., 735.

The attainment of a just and fair result is the primary objective of a court. The principles of equity are the machine tools with which it works. Through their proper use and application justice is fashioned.

One of these principles, the doctrine of estoppel *in pais,* shuts the door of the court against one who seeks to take advantage of his own wrong or to profit by his own misrepresentations. It had its origin in the determination to prevent fraud resulting in injustice. *Thomas v. Romano,* 33 So., 969; *Kelly v. Wagner,* 61 Miss., 299. It is based upon the manifest inequity of permitting a person to reap advantage from his own wrong. *Scott v. Bryan,* 210 N. C., 478, 187 S. E., 756, or to allege and prove the existence of facts which by his own conduct he has induced another to believe did not exist. *Shean v. U. S. Fidelity & Guaranty Co.,* 248 N. W., 892. Its object is to prevent fraud resulting in injustice. Dallas *Joint Stock Land Bank v. Gore,* 100 S. W. (2d), 396; *Chernick v. National Surety Co.,* 148 Atl., 418. It is applied to transactions where it is found that it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced or of which he accepted the benefits. *Young v. Venters,* 229 Ky., 806, 18 S. W. (2d), 277. It concludes and shuts a man's mouth from speaking the truth, where to permit him to speak would allow a departure from

fair dealing and render it impossible to administer the law as a system, *Lumber Co. v. Price,* 144 N. C., 50, 56 S. E., 684, and is applied and enforced on the grounds of public policy and good faith. *Houston Nat. Bank of Dothan v. Eldridge,* 84 So., 430.

Thus it does not challenge the strict legal right. It denies a remedy. In short, it is the conscience of the court in action, repelling the plea of one who seeks to reap the benefits of his own misrepresentations or wrong-doing.

Even before married women were granted full capacity to contract in regard to their separate estates, this Court spoke on the question of the effect of their fraud.

To estop a married woman from alleging a claim to land, there must be some positive act of fraud or something done upon which a person dealing with her might reasonably rely, and upon which he did rely, and was thereby injured. *Towles v. Fisher,* 77 N. C., 437; *Loftin v. Crossland,* 94 N. C., 76; *Weathersbee v. Farrar,* 97 N. C., 106, 1 S. E., 616.

"It must be borne in mind that the legal disability of coverture, or of infancy, carries with it no license or privilege to practice fraud or deception on other innocent persons; nor will the disability be permitted to protect them in doing so." *Pilcher v. Smith,* 2 Head (Tenn.), 208; *Boyd v. Turpin,* 94 N. C., 137; *Burns v. McGregor,* 90 N. C., 222.

"Coverture disables a woman to enter into a binding contract, but it affords no protection or shelter for fraud." *Walker v. Brooks,* 99 N. C., 207, 6 S. E., 63.

A married woman "has capacity to perpetrate and participate in a fraud. . . . She has no right, or privilege, or disability, that excuses her as to such fraudulent transactions in which she participates, nor that protects her against their consequences. . . . She has privileges and immunities in some respects, but not such as will help her to share in a fraud with impunity when she must go into a court of justice to enforce her claims growing out of it. The law abhors fraud and will not help any person to take advantage of and have benefit of it. . . . In such case the wife must be on the same footing as a *feme sole,* and treated as such." *Hart v. Hart,* 109 N. C., 368, 13 S. E., 1020; *Hodge v. Powell,* 96 N. C., 64, 2 S. E., 182.

"The general rule is, that 'to estop a married woman from alleging a claim to land, there must be some positive act of fraud, or something done upon which a person dealing with her, or in a matter affecting her rights, might reasonably rely, and upon which he did rely and was thereby injured.'" *Rich v. Morisey,* 149 N. C., 37, 62 S. E., 762; *Wells v. Batts,* 112 N. C., 283, 17 S. E., 417; *Williams v. Ellingsworth,* 75 Tex., 480, 12 S. W., 746; *McLaren v. Jones,* 89 Tex., 131, 33 S. W., 849; *Matador Land and Cattle Co. v. Cooper,* 87 S. W., 235.

Then, in *Martin v. Bundy,* 212 N. C., 437, 193 S. E., 831, decided after the enactment of the Martin Act, this Court said by way of dictum: "The full doctrine of estoppel did not apply to a married woman (before the Martin Act) because she was not *sui juris* and was under disability, but she could bind herself by way of estoppel by some affirmative act of fraud upon which a prudent man might rely to his injury in matters affecting her rights." See Kelly, Contracts of Married Women, p. 122; Bishop, the Law of Married Women, Vol. 2, p. 395; Harris, Contracts by Married Women, p. 435; Cord, Legal and Equitable Rights of Married Women, 2nd Ed., sec. 1287; *Bodine v. Killeen,* 53 N. Y., 96. See also *Land Bank v. Moss,* 215 N. C., 445, 2 S. E. (2d), 378; and *Tripp v. Langston,* 218 N. C., 295, 10 S. E. (2d), 916.

The great weight of authority sustains the view as stated in the *Martin case, supra,* that a married woman may be estopped by her misrepresentations or other unconscionable or inequitable conduct to assert a right to real property, although her deed is void because not executed according to the formalities required to bind married women, or the nonjoinder of her husband. See Anno. 76 A. L. R., 1501, and 107 A. L. R., 331.

"As has been said in a number of cases, coverture is no excuse, in equity, for fraud, and a party entitled to relief in a court of equity will not be denied such relief simply because the person by whose fraudulent act he has been injured is a married woman." 26 Am. Jur., 659; *Newman v. Moore,* 94 Ky., 147, 21 S. W., 759; *McDanell v. Landrum,* 87 Ky., 404, 9 S. W., 223; *Holder v. Hunter,* 29 N. M., 644, 226 Pac., 163; *Bucknor's Estate,* 136 Pa., 23, 19 Atl., 1069.

In the absence of her husband's coercion, a married woman can bind herself by way of estoppel by some affirmative act of fraud, upon which a prudent man might and did rely to his injury in matters affecting her rights. . . . She can only be divested of her property in the method prescribed by law, except by intentional fraud. Kelly, Contracts of Married Women, p. 122, sec. 4.

If the only inquiry concerns the effect of her fraud as an estoppel, there is no reason why she should not suffer the consequences of her fraud the same as though she were not under coverture. . . . The question is not one of power to convey. If a man can lose his lands by estoppel when the general law authorizes him to convey only by deed, it is impossible to find a good legal reason why a wife may not lose hers by estoppel, though the general law qualifies her to convey them only by a deed executed jointly with her husband. Bishop, the Law of Married Women, Vol. 2, pp. 395-6.

A fraud may be committed by the wife in the sale of her land which will not vitiate the sale and authorize a recission at the instance of the

vendee, but will estop her from avoiding the sale or conveyance of her property. Harris, Contracts of Married Women, p. 448.

A married woman may commit such acts as will amount to positive fraud and thereby estop herself and destroy all rights in her separate estate, under many circumstances, whatever those rights may be. *Ibid,* p. 452.

A married woman should be held to the observance of that good faith in her dealings with the world to which others are bound. Her protection is for the prevention of fraud. She ought not thereby to be enabled, with impunity, to defraud others. *Bucknor's Estate, supra; Grim's Appeal,* 105 Pa., 382.

She is not privileged to practice deliberately a fraud upon an innocent person. *Read v. Hall,* 57 N. H., 482. If she could be estopped in no instance, the morality of the law would be placed upon a very low plane, and the disability of coverture, instead of being, as it ought to be, a shield for her protection againt legal wrong, would become a sword of injustice for the license of fraud. While, therefore, she may not always be estopped to deny her capacity to contract, especially so as to convey her property in a mode prohibited by law, she may be estopped by any positive act of fraud, as a person *sui juris* would be. *Wilder v. Wilder,* 89 Ala., 414, 7 So., 767; *Patterson v. Lawrence,* 90 Ill., 174; *Grice v. Woodworth,* 10 Idaho, 459, 80 Pac., 912; 3 Pomeroy's Eq. Jur., 5th Ed., sec. 814.

The contracts and agreements of married women in reference to their real estate, when not joined therein by their husbands, where such agreement is free from fraud, cannot be enforced at law or in equity. But where married women make such contracts or agreements by fraudulent means and thus obtain inequitable advantages, a court of chancery will hold them estopped from setting up and relying on their coverture to retain the advantage. *Grice v. Woodworth, supra.*

In *Newman v. Moore, supra,* the plaintiff, a married woman, concealed her marriage and declared she was a widow. The Court said: "She (plaintiff, a married woman) will not be allowed to take advantage of her own wrong and will be estopped from interposing her inability to contract, in bar of the consequences of her own fraud."

In *Bryant v. Freeman,* 134 Tenn., 169, the plaintiff's husband had been sentenced to the penitentiary for life. She disposed of her property, representing herself to be a widow. The court held that her fraud estopped her from questioning the conveyance on the ground that her husband did not join and her privy examination was not taken in the form prescribed for deeds of married women. In so doing it said: "We think the defense (of estoppel) is well founded. The law intends the disability of coverture as a shield, not as a cloak for fraud. When used

for the latter purpose it will not be permitted to inflict a wrong on inno-
cent people."

In *Patterson v. Lawrence, supra,* a married woman when applying for
a loan on the security of a deed of trust represented that she was a widow.
The Court said: "Where married women make such contracts or agree-
ments (in reference to their real estate) by fraudulent means, and thus
obtain inequitable advantages, a court of chancery will hold them es-
topped from setting up and relying on their coverture to retain the
advantage."

"While as a general thing the courts are loath to hold that a married
woman may divest herself of her property in any way other than that
prescribed by statute, yet we have repeatedly held that a married woman
may by her acts and declarations estop herself from asserting dower or
other claims, when to permit her to do so would operate as a fraud (citing
cases). The estoppel in such cases is rested altogether upon the doctrine
that a married woman will not be allowed to use her coverture to perpe-
trate a fraud." *Ayer & Lord Tie Co. v. Baker,* 128 S. W., 346 (Ky.);
26 Am. Jur., 658; 3 Pomeroy's Eq. Jur., 5th Ed., sec. 814, p. 239.

In *Cupp et al. v. Campbell,* 103 Ind., 213, a married woman executed
a mortgage on her separate estate to secure a debt of her husband. Under
the Indiana law such deed is void. The Court said: "A married woman
has no more right to injure or mislead others by her conduct or repre-
sentations than if she were *sui juris,* and where it is made to appear that
by fraud, misrepresentation or concealment she has led one into contract-
ing with her as principal, she will not be permitted to gainsay such
representations as may have induced another to act who in good faith
relied on them." *Oglesby Coal Co. v. Pasco,* 79 Ill., 164; *Powell's
Appeal,* 98 Pa. St., 403; Bigelow Estoppel, 513; Cooley, Torts, 117."

"Neither the statute of frauds nor the various statutory provisions
enacted for the protection of a homestead claimant can be held to do
away with the general equity doctrine of estoppel *in pais.* While it is,
true some courts have held to the contrary, the weight of modern author-
ity is to the effect that the doctrine of equitable estoppel will be applied
to married women as well as to a *feme sole.* The doctrine is not invoked
to render invalid a contract which is void under the statute of frauds or
under statutes for the benefit and protection of the homestead claimants,
but it is invoked to prevent the successful perpetration of fraud by pre-
venting wrongdoers from urging the provisions of such statutes to shield
them in their tortious conduct." *Engholm v. Ekrem,* 119 N. W., 35
(N. D.). See also note, *Grice v. Woodworth,* 69 L. R. A., at page 584;
also *Smith v. Willard,* 174 Ill., 538; *Hobbs v. National R. Co.,* 122 Ala.,
602; *Warner et al. v. Watson et al., Trustees,* 35 Fla., 402; and *Bruce v.
Goodbar,* 104 Tenn., 638.

The Martin Act, *supra,* is very broad, comprehensive, and thorough in its terms, meaning, and purpose, and primarily secures to the wife the complete ownership and control of her property as if she were unmarried. She is now *sui juris* in respect to her contracts. *Tise v. Hicks,* 191 N. C., 609, and cases cited. She may convey her real property, but to do so by deed she must first obtain the written assent of her husband and be privately examined. There are, incidentally, reciprocal limitations on the right of the husband.

Even these requirements are not ironclad, as the law of the Medes and Persians. They may be set at naught by the insanity of the husband, *Lancaster v. Lancaster,* 178 N. C., 22, 100 S. E., 120; or by a deed of separation, G. S., 52-5 (C. S., 2529); or the abandonment of her husband, G. S., 52-21 (C. S., 2524); *Nichols v. York,* 219 N. C., 262, 13 S. E. (2d), 565; or through the bar of the statute of limitations, ch. 78, Public Laws 1899; *Graves v. Howard,* 159 N. C., 594, 75 S. E., 998; *In re Bateman's Will,* 168 N. C., 234, 84 S. E., 272; or by silence when it was her duty to speak, *Payne v. Flack,* 152 N. C., 600, 68 S. E., 16. And she may subject her land to judgment and execution sale by breach of her contract. *Everett v. Ballard,* 174 N. C., 16, 93 S. E., 385; *Warren v. Dail,* 170 N. C., 406, 87 S. E., 126; *Lipinsky v. Revell, supra; Thrash v. Ould,* 172 N. C., 729, 90 S. E., 915; *Miles v. Walker,* 179 N. C., 479, 102 S. E., 884.

But her right to convey and the formalities required are only secondary although important considerations as bearing upon her complete emancipation. The all-important, decisive fact is that she may sue as a *feme sole.* Coverture as a disability is not recognized. *Carter v. Reaves,* 167 N. C., 131, 83 S. E., 248. The husband is no longer a necessary party. *Lipinsky v. Revell, supra; Earnhardt v. Clement,* 137 N. C., 91, 49 S. E., 49; *Kirkpatrick v. Crutchfield,* 178 N. C., 348, 100 S. E., 602.

The Martin Act carries with it the privilege and liability of suing and being sued alone. *Croom v. Lumber Co., supra,* and cases cited. This right to sue is a personal privilege. *Lippard v. Troutman,* 72 N. C., 551.

When she seeks to avail herself thereof, she comes into court subject to all the limitations imposed upon other litigants. She sues as a *feme sole.* Her standing in court is to be determined by the same standards required of others, and she should be held to the observance of that good faith in her dealings with the world to which others are bound.

On the showing made by the defendants, the *feme* plaintiff placed them in possession of the *locus in quo* and induced them to part with their money by falsely representing that she was unmarried. For eighteen months she was apparently content. But now, since all past-due taxes and installments on the loan have been paid, the debt has been reduced and placed in good standing, the property has been repaired, and eco-

nomic conditions have improved, she seeks to recover possession of the land. As a litigant she should not be heard to deny the truth of the assertion she then made. Nor should the court come to her assistance by ejecting defendants.

Applying the doctrine, as I think it should be here, the Court does not pass upon and decide the strict legal rights of the parties. It does not decide that the deed is void or that the defendants' possession is lawful or unlawful. On the contrary, the protection given by way of defense theoretically assumes that the title of the purchaser is really defective as against that of his adversary. The Court simply ignores the question of validity, declines to examine into the intrinsic legal merits of the two claims, and bases its action upon entirely different considerations. It simply refuses to come to the aid of the one who seeks to profit by his own inequitable conduct.

It is said, however, in the majority opinion: · "It seems incontestable that unless the *feme* plaintiff is estopped by her deed, which is not pleaded, she is not entitled to recover." This is the theory upon which the opinion is bottomed. But as I view it such is not the case. Defendants do not rely on estoppel by deed. Estoppel *in pais* is quite a different principle and has an entirely different application.

Some of the decisions cited, such as *Brinegar v. Chaffin,* 14 N. C., 108, were decided long before vital changes were made in the law. All relate to estoppel by deed or contract. In each the validity of the contract was directly in issue. None are directed to the law of estoppel *in pais* and are, in my opinion, beside the point.

*Scott v. Battle,* 85 N. C., 184, is decidedly different in factual situation. No wrongdoing was alleged. Defendant merely asserted that he bought without knowledge of the marital status of his grantor and prayed a lien for purchase price and improvements.

In *Williams v. Walker,* 111 N. C., 604, plaintiff sought to enforce a contract liability and attempted unsuccessfully to prove that the *feme* defendant was a "free trader." While the law of estoppel is there discussed, it should be noted that the Court said: "These principles (that the deed of a married woman cannot be made good by estoppel) announced by these high authorities are not in conflict with that other principal so tersely stated by *Chief Justice Smith* in *Walker v. Brooks,* 99 N. C., 207: 'It (coverture) affords no shelter or protection for fraud'; and by *Chief Justice Merrimon* in *Burns v. McGregor,* 90 N. C., 222: 'The Constitution and the statute wisely extend large and careful protection and safeguards to married women in respect to their rights and property, but it is no part of our purpose to permit, much less help, one of them to perpetrate a fraud, if by possibility, under some sinister

influence, she should attempt to do so. It would be a reproach upon the law if such a thing could happen.' "

In *Farthing v. Shields*, 106 N. C., 289, the Court was careful to note the difference between the liability of the wife's separate estate for undertakings in the nature of contracts and where she has obtained an undue advantage by fraud.

Without undertaking to analyze each of the other cases cited, it is sufficient to say that an examination thereof will disclose like distinctions and a persistent purpose on the part of the Court to limit the decisions to estoppel by deed and to distinguish the law as stated from cases of fraud. In none of them does it appear that the Court had any intention of altogether disavowing the applicability of the doctrine of estoppel *in pais* to married women. Hence, none of the authorities cited by the Court or by the plaintiff are in conflict with my position. Indeed, I concede that if the situation were reversed and defendants were seeking to enforce the contract a different result would follow.

The law as stated in *Williams v. Walker, supra,* when applied to the facts in that and similar cases, is sound. But the law draws its quality of soundness from the particular facts to which it is applied. It should not be taken out of its setting, transplanted, and so applied as to confer special privileges and immunities upon a married woman and authorize her to use the courts to reap the benefits of a fraudulent transaction. *Warren v. Dail,* 170 N. C., 406, 87 S. E., 126; *Light Co. v. Moss,* 220 N. C., 200, 17 S. E. (2d), 10; *Ross v. Greyhound Corp.,* 223 N. C., 239.

On the facts in this case, that plaintiff signed the deed, "Mrs. Birdie S. Buford," has no significance. That was her name through her first marriage. She had been known by and done business in that name for years, when she was admittedly a *feme sole.* It could not serve to put defendants on notice of her second marriage to the same party.

It is true that no other State has an identical constitutional provision. The fact is that few of the States have made any effort by constitutional provision to free married women of their common law disabilities.

Arkansas, Mississippi, South Carolina, Alabama, and Utah have granted complete emancipation. In those States a *feme covert* may convey her separate estate as if unmarried.

The provisions in the other States may be summarized as follows:

The property of the wife shall be and remain her separate estate. California, Kansas, Georgia, Oregon, North Dakota, South Dakota, Nevada, Texas, and Florida.

The separate estate of a married woman shall not be liable for the debts of her husband. Maryland, West Virginia, Georgia, Oregon, Arkansas, North Dakota, South Dakota, and Florida.

Local or special laws are not to be passed relieving a *feme covert* of disability. Kentucky.

So, while our provision has no exact counterpart, the general limitations are not unlike. Indeed, it is in those states which have no constitutional provision freeing married women of their common law disabilities, in whole or in part, that the doctrine of estoppel *in pais* has been most often applied.

The divergence of opinion comes to this: The majority say that estoppel by deed is the only defense and that this doctrine cannot be applied as against a void deed of a *feme covert*. I freely concede that a married woman is not estopped by a deed which is void at law, but contend that this doctrine is not relevant to the facts in this case. Estoppel *in pais,* pleaded by defendants, is the controlling principle of equity which should be applied and, if applied, it shuts the doors of the court against the plaintiff as a litigant without regard to her marital status.

Hence, my view of the law, as well as the dictates of my own conscience, compels me to vote to reverse.

DEVIN and SEAWELL, JJ., concur in dissent.